UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

BYRNES and others *against* THE NATIONAL INSURANCE COMPANY in the City of NEW-YORK.

ASSUMPSIT, upon a policy of insurance. The ship *Her-* cules, owned by the plaintiffs, was insured by the defendants, on a voyage from *New-York* to *Liverpool,* and at and from thence to *New-York,* to the amount of $10,000, by policy in the usual form, dated *October* 19th, 1820. In coming down the river, after leaving the dock at *Liverpool,* on her return voyage, she got aground, and was obliged to put back, unload her cargo, and repair. She had been copper sheathed about two years before, and some of the sheathing having been rubbed off by grounding, a part of it was taken off, and replaced by new sheathing, also of copper. The bills and costs of her repairs adjusted, and admitted, between the parties, to be particular average, after deducting the usual allowance of one third, new for old, amounted to $1612,76, all of which the defendants paid, except $279,26, their liability to pay which depended upon the determination of the question hereafter mentioned, and which sum was retained by them until the question should be decided by this Court. The tradesmen who furnished the copper for re-sheathing the ship, retained and credited, in their account, *the value* of the *old copper* taken off the vessel, as far as it went, in *part payment.* The *new copper* furnished, amounted to £358 5s. 8d. and the *old copper,* received by them, amounted to £188 10s. They rendered their bill, accordingly, charging the *new copper* furnished, and crediting the *old copper* received by them, which left a balance due them, of £169 15s. 8d. which the plaintiffs paid, and which balance, only, they charged in their ac-

On assumpsit upon a policy of insurance, In adjusting the claim for a partial loss, where any of the ship's materials are sacrificed, *one third new for old* is to be deducted from the balance of the *new materials,* &c. after first deducting therefrom the value of the *old materials.* And the insurer has no right first to deduct the *one third new for old* from the gross amount of the repairs ; then the value of the *old materials,* and make the last balance the measure of the damages. Thus, where a part of the *old copper sheathing* was taken off, and replaced by *new sheathing of copper ;* held, that in

adjusting the loss, you must first deduct the value of the *old copper* from the value of the *new ;* then deduct *one third new for old* from the balance, and that the remainder formed the measure of damages.

The *old materials,* in such a case, belong to the assured.

The deduction of *one third new for old,* is made, in *this state,* without regard to the distinction which prevails in *England,* between a *new* and an *old* vessel.

The contract of the underwriters is one of indemnity merely.

UTICA.
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

count of particular average.  Upon this balance the deduc-
tion of *one third new for old* was made.  But the defendants
insisted, that they had a right to claim the deduction, or al-
lowance, of *one third new for old*, upon the whole amount
of the bill for *new copper* used in the repairs, including the
£188 10s. which was paid for by the *old copper* taken by
the tradesmen.  On the other hand, the plaintiffs contended,
that the deduction, in respect of the copper, ought to be
made only on the balance of £109 15s. 8d. paid by them to
the tradesmen, and for which, only, they made their claim
on the defendants.   If the defendants were right in their po-
sition, then the particular average had been fully paid ; and
it was agreed that they would be entitled to judgment ; but
that, if the plaintiffs were right, then they would be en-
titled to judgment for the $279,26, with interest, from
23d June, 1821 ; that being the amount of the deduction
claimed, of the *one third new for old*, on the sum of £188
10s. paid by the *old copper*.  A copy of the tradesmen's
bill, as furnished, and of the adjustment between the parties,
was annexed to the case ; and a *cognovit* was given to cover
the amount, if the Court should be of opinion with the
plaintiffs.

*W. Slosson*, for the plaintiffs.  For the authorities and
cases, establishing the rule of adjustment, upon a claim for a
partial loss, where any of the ship's materials are sacrificed,
the Court are referred to *Stevens on Average*, 159 ; 1 *Magens
on Insurance*, 156, 184 ; *Dunham & Bool* v. *The Commercial
Insurance Company of New-York*, (11 *John.* 315 ;) 1 *T. R.*
408, 412, 413 ; and *Ralston* v. *The Union Insurance Com-
pany*, (4 *Bin.* 386.)   The *general principle* is admitted, and
its further examination will not be necessary.

1. The object of the policy being to give a full indemnity
to the assured, such rule of adjusting the partial loss, in ca-
ses of this kind, should be adopted, as may both be uniform
in its application, and also give such indemnity.

2. The rule contended for, by the plaintiffs, does give such
indemnity, and may be uniform in its application, to wit :
to *deduct from the bills, or amount of the expenses for repairs*,

*the value of the old materials, and then deduct one-third from the balance, on account of new for old.*

UTICA,
August, 1822.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

This seems necessarily to follow, from the nature of the contract of insurance. It is one of *indemnity merely ;* and the construction must be in reference to that object. Another principle is, that the insurer has no interest in, or title to the subject of insurance, until an abandonment ; and the damages must be considered in reference to the title continuing in the assured. (*Church* v. *Bedient et al.* and *Hallett* v. *Peyton*, 1 *Caines' Cas. Err.* 21, 23, &c.) In all cases of this kind, the inquiry is, what are the damages which the plaintiff has sustained ? The property remains in the assured. The avails of the property injured are to be deducted ; and, until the point of deduction is exhausted, there is no damage to the assured. The insurance is against *loss* and *damage* by accident ; and he is *damaged*, in this instance, to the extent of the *loss*, after deducting therefrom the value of the *old copper*. In legal construction, he is, in all cases, made better, to the amount of *one third*, by the addition of the *new materials*. The *old materials* enable him to replace his loss to the extent of their value ; and, in point of fact, he sustains no loss until their value is exhausted.

3. The contrary rule is iniquitous in its operation, and may often lead to palpable absurdity ; making the assured, who has incurred heavy expenses, *in fact*, *a debtor to the insurers*. Suppose the *old copper* worth £250 ; and the *new copper* and *labour* £300. Then, if one third is deducted, it leaves £200 ; which is less than the *old copper* is worth, £50 ; and the assured, instead of receiving indemnity, would, apparently, be debtor to that amount : whereas, the opposite principle, of charging the insurer with the *balance* of the expenses, after deducting the *value* of the old materials, steers clear of any such difficulty. At the same time, it is the just and true rule ; because, we have seen, that, as far as the old materials go, the insured is not damnified.

4. This results from the fact, that the property in the *old materials* remains in the assured. There can be no pretence for the rule contended for, by the defendants, except upon the supposition that these are the property of the insurers ;

UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

in which case it might be said that they have made this partial payment with their own materials : but it is plain, that these materials cannot, in this manner, be vested in them. This is not the case of an abandonment, to which it does not bear the remotest analogy. The assured have no right to abandon.

5. Upon every principle, therefore, the insurer can only claim the deduction of *one third new for old*, on the *amount of the charge or claim against him :* and, in this case, the claim is only for the *balance*, after deducting the *value* of the *old copper*.

*J. Wells*, contra. He delivered to the Court the result of the two different principles of settlement, contended for by the parties, which was as follows :

" Principle of settlement contended for by the defendants :

| | | | |
|---|---|---|---|
| *Amount of new copper*, | £358 | 5*s.* | 8*d.* |
| *Ded.* ⅓ *new for old,* | 119 | 8 | 6 |
| | | | |
| To be paid by underwriters, | £238 | 17 | 2 |
| But, as the *proceeds* of the *old copper* amounted to £188 10*s.* the underwriters claim credit for that amount, | 188 | 10 | |
| | | | |
| *Amount actually to be paid, and which has been paid,* | £50 | 7 | 2 |

The assured, however, state the principle as follows :

| | | | |
|---|---|---|---|
| *Amount of new copper,* | £358 | 5 | 8 |
| *Ded.* proceeds of old *copper,* | 188 | 10 | |
| | | | |
| | £169 | 15 | 8 |
| *Ded.* ⅓ *new for old,* | 56 | 11 | 10 |
| | | | |
| *To be paid by underwriters,* | £113 | 3 | 10 |
| *Ded.* amt. *paid,* | 50 | 7 | 2 |
| | | | |
| *Bal. claimed to be paid,* | 62 | 16 | 8 |

Still=$279$\frac{26}{100}$ "

UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

We cannot differ as to authorities and principles. The only difference is in their application. This is a case of repairs upon a vessel; and the rule of deducting *one third new for old* is settled. How is this to be done? From what sum is the deduction to be made? We say from the *gross amount of the repairs;* whether the *old materials have* or *have not* produced any thing. This is a uniform principle, always producing the same results. True, it may not always indemnify the insured—sometimes it will do more. No general rule can always produce *individual justice.* The object is *general justice*, to be found in some certain settled rule. The amount is not the object; but to settle a principle of commercial law, by which the insurance offices shall be governed. What we complain of is, that the one contended for by the plaintiffs, will fluctuate in its results, and consequently be difficult in its execution. We think the principle for which we contend, will be found, on examination, to be, at least, a century old. In the case already cited, of *Da Costa* v. *Newnham*, (2 *T. R.* 407) *Buller*, J. (*p.* 408) treats it as perfectly familiar and settled. He says, " that one third of the sum charged for repairs was taken off, *which was the usual sum allowed in respect of new work for old.*" The less the number of exceptions to the rule, the greater is the certainty and safety in commercial business. That this is so is evident from the policy adopted by our Courts, relative to this very subject, in another respect. In *England* the deduction of one third new for old, is not allowed, from the amount of repairs, upon a new vessel; and she is considered new, within this rule, until she has performed her first voyage. In *Weskett on Insurance*, 456,* *tit. Repair*, it is said, that " one, third is deducted from the repairs of a ship, if she has met with any accident, only in in her second voyage." But this Court, to avoid multiplying exceptions, in *Dunham & Bool* v. *The Commercial Insurance Company of the City of New-York*, cited on the other side, determined against this distinction, and left the rule to operate universally. This being understood, works an indemnity, for the very reason,

---

* This is page 459, in the *Dublin* edition of 1783.

UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

that every one *does* understand it. The case of *Depeyster* v. *The Columbian Insurance Company*, (2 Caines' Rep. 85) was determined in the same spirit. The question was whether the assured could claim for repairs, which became necessary in consequence of defects existing in the vessel, previous to the voyage ; and the Court held that he might, unless they were such as to render the vessel unseaworthy. They refused to go into such a minute examination, as was there called for, and adopted the general rule.(*a*) You cannot, with convenience or safety, multiply these exceptions. Precise and particular justice is not attended to in the cases mentioned, because is is impracticable. Where the object is to subject underwriters to unreasonable sums, the rule ought to be construed favourably to them, and the more so, as they cannot possess the means of promptly contesting the amount claimed. *Stevens on Average*, 159, lays down the rule very distinctly, that, " In the adjustment of a claim for a partial loss ; and, also, for a general average, (where any of the ship's materials are sacrificed) it is customary to deduct *one third* from the new materials and *labour*." Here is no qualification of the rule, because it should always be a simple one. If you inquire what has become of the *old materials ?* you do what, it is confessed, no authority will warrant. *Stevens*, experienced as he was at *Lloyd's*, would certainly have given us the exception, had it existed. And no such exception is made by the usages of business at the insurance offices. The rule, as laid down in *Smith v. Bell et al.* (2 *Caines' Cas. Err.* 153) is, that, to constitute a technical total loss, by injury to the vessel, she must be damaged to the amount of half her value, or more, after deducting one third new for old. In other words, suppose the vessel worth $1000—the repairs $750. Then, by deducting $250, the one third new for old, you have the true sum. What is contended for by the plaintiff would destroy this rule. The moiety would be made up by them, upon a computation and deduction of the old materials ; making every case depend upon its own particular circumstances. In *Da Costa* v.

(*a*) Vid. *Millar on Ins.* 136, and the note on that page.

*Newnham, Buller J.* says, that "the usage is founded upon the idea, that the owner gets the ship the better of the repairs." Thus, in the case put, the $250 is to be borne by the assured, because his vessel is better to that amount. Whatever he gets of the old materials is *beyond* the sum deducted. This is not *mere indemnity,* which is admitted to be all he can ask, from the nature of the contract. It is more. Upon what principle, then, can he ask the benefit of the old materials, and the sum deducted, also ? Again : In this case, the materials happen to be sold, and applied in payment for the repairs. Suppose that this had not been done ; but they had remained at the place of repair : at whose risk, and on whose account, would they have thus remained ? Would not the claim have been the same ? The rule ought not to be fashioned to the circumstances of a given case. It is thereby rendered unequal. If the old materials had not been sold, they would have belonged to the underwriter ; and the assured could not have sold them. The underwriter having paid the average loss, upon what principle is it, then, that he cannot apply them to his own benefit, when sold by the assured, to pay for repairs ? The amount of repairs was £358 5s. 8d. Now, to an inquiry—What were your repairs ? would any one think of answering, £169 15s. 8d. ? Again : the underwriter is bound to repair. Suppose he had done these repairs himself. The amount he pays is £358 5s. 8d. Would he not be entitled to *one third;* and would the answer do—" You have got the old materials ?" He might reply—" Although I have taken the old materials, yet your vessel is £358 5s. 8d. better." And shall the underwriter, because he cannot follow the vessel to a foreign port, and make the repairs in person, have the principle turned against him ? The assured undertakes to make these repairs, as the *agent* of the assurer, under the usual clause in the policy, stipulating that *the assured, his servants, &c. may labour, &c. in and about the safeguard, &c. of the vessel, at the charge of the insurer.*(b) It may be said that the old materials do not belong to the underwriter, because the title to the ship is in the assured. True. The underwriter cannot,

UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

(b) Vid. 2 *Condy's Marsh. Addenda,* 843.

UTICA,
August, 1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

claim the vessel : but the old materials are separated, form no part of the vessel, and become a distinct subject of property.. The owner's title applies to the substituted materials, and he waives all claim to the old. The underwriter has placed the new materials there. The *deduction of the one third new for old* is not based upon the *receipt* of the *old materials*, but upon the fact that the new materials are *one third* better. It is an abandonment, *pro tanto.* Suppose an insurance of a house against fire ; and that the *doors* and *windows*, alone, are burned. The title applies to the subject repaired. And *would* the owner, in such a case, have any title to the old materials ? Say the damages are $300—the payment of $200, by the assurer, operates as a full indemnity. The hypothetical case, making the assured indebted to the insurer, is an extravagant one ; and, probably, a claim never would be made under such circumstances. That case must be provided for, when it arises.

Again : the rule is, that there can be no claim, unless there be a damage of 5 *per cent.(c)* Now suppose the $358 5s. 8d. to exceed the 5 per cent. but the difference between that and the old materials to fall short of it : would the insured be willing to make this difference the test of the 5 *per cent. ?* No. The gross amount would be the *test.* So of all general commercial rules. They operate sometimes against one—sometimes against the other party ; but must be preserved, for the sake of certainty.

*Slosson,* in reply. The principle, for which we contend, follows the very nature of the contract of insurance, as it is understood by all the authorities. And as to the *usage* mentioned, of settling according to the opposite rule, I am not aware that any such exists ; and do not believe that it has prevailed to any such extent as to form a *rule.* So far as the old materials extend, the assured is not damnified. Suppose the old materials amount to as much as both the *new labour* and materials, nothing could be claimed, because there would be *no damage ;* upon which must be put all claims under contracts of insurance. So far as the old materials

(c) Vid. *Stevens on Average,* 206.

extend, the assured has expended nothing, nor is he bene-
fitted, for he is the owner of the materials.

The argument upon the other side, has mainly rested upon
the erroneous principle, that the act of repairing, *per se*,
transfers the property of the old materials to the assurer :
whereas there can be no abandonment, except in the case of
a *total loss*. And even then it is in the election of the assu-
red, whether he will abandon or not. This abundantly ap-
pears by cases already cited. Now, suppose these *old mate-
rials* had been saved and stored in *Liverpool*—could the un-
derwriters have brought trover for them ? In every case of
the adjustment of a partial loss, the *real* damage is always
inquired into. You take an account of the *sound* goods, at
the port of destination. You then take an account of the
*damaged* goods ; and the *difference* is the *loss* to be paid for.
(*Lawrence* v. *The New-York Insurance Company*, 3 *John.
Cas.* 217.) So, in this case, the balance, after deducting the
old materials, is the measure of the damages. In case of a
*total loss*, the *whole* is to be recovered, without deduction.
That is not so here, because this case bears no analogy to
one of a total loss. In the case of *Church* v. *Bedient et al.*
(1 *Caines' Cas. Err.* 21) the assured elected to retain, and
the damages were, therefore, less. The actual damages
were lessened, because the goods retained were held to form
a deduction. It was not treated in the light of set off. Here
the underwriter, by the deduction of *one third*, is holden to
pay the actual damage. There is no more difficulty attend-
ing an adjustment, than in all cases of a partial loss. Even
the illustration taken by the other side, from insurance against
fire, is unfortunate for them ; for it is equally the case there,
that the *actual* damage, *alone*, is to be paid, unless there be
an abandonment of the premises.

*Curia*, per SUTHERLAND, J. The general rule is unques-
tionable, that, in the adjustment of a claim made by the insu-
red upon the underwriters, for repairs put upon a vessel,
the underwriters are entitled to a deduction of *one third*,

UTICA,
August, 1823,

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

UTICA,
August,1823.

BYRNES
v.
NATIONAL
INSURANCE
COMPANY.

from the expenses of the repairs ;(d) or, in other words, that they are bound to pay but two thirds of the expense. This deduction of *one third new for old*, as it is termed, is allowed upon the supposition that the vessel, after being repaired, is in better condition than she was at the commencement of the voyage, in consequence of *new* materials having been substituted for *old*. And, as the contract of the underwriters is one of indemnity merely, it is equitable that a deduction should be made, in their favour, from the cost of the repairs, equal to the enhanced condition of the vessel.

To avoid the inconvenience and embarrassment of an inquiry, in each particular case, into the difference in value between the present and former condition of the vessel, it has been established, as a general rule, that this difference shall be estimated at one third of the cost of the repairs.

In the English Courts, if the injury is sustained, and the repairs are made when the vessel is new, that is, in her first voyage, no deduction is allowed to the underwriters ; because, the vessel *being new*, it is not to be supposed that she is put in better condition by the repairs. But, in this Court, that distinction has not been adopted ; and the deduction is made alike, whether the vessel is *new* or *old*.(e)

This being the general principle, the question is presented in this case, whether the value of the *old materials*, whatever it may be, is to be deducted from the *gross amount* of repairs, and the deduction of *one third new for old* made from the *balance* ; or, whether the *one third* is to be deducted from the *gross amount*, and the *old materials* to belong to the underwriters. For instance : suppose the *gross amount* of repairs to be 400 dollars—the *old materials* to be worth 100 dollars. The assured contend that the amount is to be thus stated :

(d) *Stevens on Average*, 159.  *Da Costa* v. *Newnham*, (2 *T. R.* 407.) *Smith* v. *Bell and others*, (2 *Caines' Cas. Err.* 153.)  *Dunham* & *Bool* v. *The Commercial Insurance Company*, (11 *John.* 315.)

(e) 11 *John.* 315.

| | | |
|---|---|---|
| *Repairs,* | $400 | UTICA, August, 1823. |
| *Deduct value of old materials,* | 100 | |
| | —— | BYRENS |
| *Balance,* | 300 | v. |
| *Deduct one third new for old,* | 100 | NATIONAL INSURANCE COMPANY. |
| | —— | |
| *To be paid by underwriters,* | $200 | 400—100= 300—100= 200. |

The underwriters, on the contrary, contend, that the true principle of settlement is as follows :

| | | |
|---|---|---|
| *Repairs,* | $400 | |
| *Deduct one third new for old,* | 133,33 | 400—133,33 =266,67— 100=166,- 67. |
| | —— | |
| | 266,67 | |
| *Deduct, also, old materials applied to repairs,* | 100,00 | |
| | —— | |
| | $166,67 | |

This question has never arisen, that I can find, either in the English Courts or our own; and, although cases will not frequently occur, in which the old materials will be of sufficient value to induce a discussion of it, some rule upon the subject ought to be established. It seems to me to resolve itself into the enquiry, *to whom do the old materials belong ?* If they belong to the *assured,* there is an end of the question ; for having been applied by them to the payment of the repairs, *pro tanto,* the assurer cannot possibly claim any further benefit from them. If there is any thing in the nature of an *abandonment* of them to the underwriters, then the principle contended for by the defendant may be well founded. But there is nothing like an *abandonment.* The assured do not, and could not claim, from the underwriters, the *gross amount* of the repairs. They can only claim the *difference* between that amount and the value of the old materials ; for to that extent, only, are they injured : and an indemnity is all that they can claim. It is more analogous to the adjusting of a *partial loss,*(*f*) in which case the title to the goods remains in the assured.

(*f*) Vid. *Lawrence* v. *The New-York Insurance Company,* (3 *John. Cas.* 217.) *Lewis* v. *Rucker,* (2 *Burr.* 1170.) *Johnson* v. *Sheddon,* (2 *East,* 581.)

UTICA,
August, 1823.

JACKSON
v.
WOODRUFF

The true rule, therefore, seems to me to be this—*to apply the old materials towards payment for the new, and to allow the deduction of the one third new for old, upon the balance.* This rule is simple, and capable of universal application. It affords full indemnity to the assured, and gives to the underwriters all the benefit that the principle, upon which the practice of deducting *one third new for old* has been established, will justify. The plaintiffs are, therefore, entitled to judgment, for $279,26, with interest from the 3d day of *June,* 1821, as stated in the case.

Judgment for the plaintiffs accordingly.