## D. D. MAYNARD *v.* FIREMAN'S FUND INSURANCE COMPANY.

LIABILITY OF CORPORATION FOR ACTS OF ITS DIRECTORS. — The Directors of a corporation are its chosen representatives, and constitute the corporation, to all purposes of dealing with others.    What they do within the scope of the objects and purposes of the corporation, the corporation does.    If they do an injury to another, though it necessarily involves in its commission a malicious intent, the corporation must be deemed, by imputation, to be guilty of the wrong, and answerable for it, as an individual would be in such case.

DIRECTORS OF CORPORATIONS.—The Directors or dominant body of a corporation is deemed to be the mind and soul of the corporate entity, and what they do as the representative of the corporation, the corporation itself is deemed to do ; and the manifested motives and intentions of the Directors when a material fact is in issue, are to be imputed to the corporation.

LIBEL—LIABILITY OF CORPORATIONS FOR.—A corporation aggregate has the capacity to compose and publish a libel, and by reason thereof, when done, becomes liable to an action for damages by the person of and concerning whom the words are composed and published.

MALICE.—Malice, in its legal sense, means a wrongful act, done intentionally, without just cause or excuse.

LIABILITY OF CORPORATION FOR ACTS OF ITS AGENTS.—A corporation is liable for acts done by its agents *in delicto* as well as *in contractu*, in the course of its business and their employment ; and the corporation is responsible therefor, as an individual is responsible under similar circumstances.

LIABILITY FOR ACTS OF THIRD PERSON.—If one of two innocent persons must suffer loss by the act of a third, he who put it in the power of the third person to do such act should be compelled to sustain the loss occasioned by its commission.

LIBEL BY WORDS NOT *per se* LIBELOUS.—Where, in an action for libel, the words complained of are not *per se* libelous, what the defendant intended and understood them to mean, and what they were understood to mean by those to whom they were published, constitute a proper subject of averment in pleading and proof on the trial, and if what was so intended and understood by the defendant

and understood by those to whom the words were published, was libelous, the words are actionable.

IDEM.—Where, in such a case, a complaint only averred a libelous intent and meaning, on the part of the defendant, in the composing and publishing of the words, without averring that they were so understood by those to whom they were published : *held,* that a demurrer to the complaint, on the ground that the written and published words set forth do not constitute a libel, was properly sustained.

PLEADING AND PROOF.—The rule is, that the allegations and proofs must correspond, and a consequence of the rule is another, which is, that evidence of a fact essential to the support of the action cannot be heard unless it be averred in the complaint.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The plaintiff appealed, and assigned that the Court below erred in sustaining the demurrer upon the second ground stated.   The defendant appealed, and assigned that the Court below erred in overruling the demurrer upon the first ground stated.

The other facts are sufficiently stated in the opinion of the Court.

*E. Cook,* for Plaintiff.

The demurrer admits that the defendant did maliciously publish as alleged, and that it intended by the publication to say that the plaintiff was *dishonest.*   If a libel may be taken in a double sense, the innuendo is used to attach such meaning to it as the plaintiff claims was intended, or may think necessary to make them actionable.   (*Gosling* v. *Morgan,* 32 Penn. State R. 273; *Beardsley* v. *Tappin,* 1 Blatch. C. C. 588; *Hancock* v. *Stevens,* 11 Humph., Tenn., 507; *Rogers* v. *McNamara,* 25 Eng. L. & E. 248.)   If the words are equivocal, then the jury are to say from all the evidence what was intended.   (*Snyder* v. *Andrews,* 6 Barb. 43; 8 Blackford, 155.)   There is no doubt but that any business man engaged in the same kind of business the defendant was engaged in, having such a letter sent to him, would at once say that the

7

object of the letter was to place him on his guard against employing the *subject* of the communication. It is not usual or customary when a person is discharged of dismissed from employment for the employer to notify the community that he has discharged such person " for good and sufficient reasons ;" but he usually waits until interrogated.

Again, if a Court decide upon the face of a libel that it is privileged, the plaintiff is entitled to have it submitted to the jury, that they may say whether upon its face it shows express malice. (*Gilpin* v. *Fowler*, 26 Eng. L. & E. 386; *Cook* v. *Wilde*, 30 Eng. L. & E. 284; 16 New York, 369.) When words do not in terms express the crime which by innuendo it was stated the defendant meant, the jury may say what was intended and how they were understood. (*Marshall* v. *Gunter*, 6 Rich. 419; 1 Nott & McCord, 216; 2 Nott & McCord, 592. See, also, 1 Starkie on Slander, 44, 46, 62, 105, 390, 393.) The action will lie against a corporation. (*Philadelphia, Wilmington and Baltimore Railroad Company* v. *Quigley*, 21 How. 202.)

*Patterson, Wallace & Stow*, for Defendant.

The defendant, a corporation organized under the statute for the transaction of an insurance business, is sued for a libel ; and we maintain a corporation is not liable to such an action. It was laid down in *Lamb's Case*, 9 Co. 59, Moore, 813, that every person convicted of a libel must be the contriver, procurer, or publisher thereof. Now, can a corporation with certain defined powers and privileges, and ro *implied power*, justly be said to contrive, procure, or publish a libel ? If a corporation is civilly liable to respond in damages for the publication of libelous matter, why not (under 1,520 Hittell,) punishable criminally ? But this cannot be. (*State* v. *Great Works Mill and M. Co.*, 20 Me. 41 ; 24 Me. 566.) Malice is the gist of an action for libel; how can all the stockholders be accused of malice, when the act of publication, or composition, was that of an officer ?

A careful examination of all the adjudged cases will lead to the conclusion, that whenever a corporation has been held answerable *for a tort*, it was for acts committed which were authorized by its charter expressly, or by necessary implication ; or because of the omission of some duty required by law.   Hence such acts or omissions could be authorized by a corporate vote.   But on what legal foundation would a corporate vote rest, directing the President or Secretary to commit a robbery, arson, murder, or to compose and circulate a libel ?   (*Lyman* v. *The White R. B. Co.*, 2 Aiken, Vt.)

A corporation authorized to transact an insurance business has no express or *implied* power to *publish a libel*. (*Waldo* v. *Chicago, etc., R. R. Co. et al.*, 14 Wis. 581; *Gage* v. *The Newmarket R. Co.*, 14 Eng. Law and Eq. 57; *Baltimore and Ohio R. R. Co.* v. *City of Wheeling*, 13 Grattan, 75; *Clark* v. *Farrington*, 11 Wis. 323; 5 Wis. 323; 3 Jones' Eq. 183.) The foregoing citations are not claimed to be precisely in point, any further than as maintaining, under a great variety of circumstances, that a corporation cannot, by a vote of the Directors or a majority of the stockholders, do any act or make any contract not expressly authorized by the charter, or necessarily implied, for the purpose of carrying on its business.

If an officer or officers of a corporation should compose and cause the publication of a libel, the act would be a tort, a wilful and malicious act, not within the scope of their delegated authority, and the principal, the corporation, would not be liable for it. . (*McManus* v. *Cricket*, 1 East. 106; *Wright* v. *Wilcox*, 19 Wend. 343; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 Coms. 479, 482.   See, also, *Van Wick* v. *Aspinwall*, 17 N. Y. 192; *Childs* v. *Bank of Missouri*, 2 Bennett, 17 Miss. ; *McLannan* v. *Cumberland Bank*, 24 Me. ; *State* v. *Great Works Mill and Mining Co.*, 20 Me. 43.)

By the Court, CURREY, C. J.:

The plaintiff sues the defendant, a corporation, for composing, writing, entering upon its books and publishing, of and concerning the plaintiff, who had immediately prior to the time been in the defendant's employment, the following words: "This company, for good and sufficient reasons, has resolved to dismiss D. D. Maynard from its service." The plaintiff alleged these words to be a false, scandalous, malicious and defamatory libel, written and published wrongfully and maliciously, by which the defendant intended to have it understood and believed that the plaintiff was dismissed because of dishonesty, want of integrity and ability to perform the duties in which he had been employed, and that he was wholly unfit and unworthy of employment.

The defendant demurred to the complaint on the grounds: First—That an action of libel cannot be maintained against a corporation aggregate. Second—That the written and published words set forth do not constitute a libel.

The Court decided against the demurrer on the first ground stated, but sustained it on the second ground, and thereupon judgment final was rendered in defendant's favor.

I. That a corporation aggregate may compose and publish a libel and by reason thereof become liable to an action for damages by the person of and concerning whom the words were composed and published, was decided in the case of *Philadelphia, Wilmington and Baltimore Railroad Company* v. *Quigley*, 21 How., U. S., 204. The argument against the possible existence of a cause of action of this kind is: first, that such corporation is a mere legal entity, incapable of malice, which is an essential element of a libel; and second, that a libel composed and published by the Directors and representative agents of a corporation aggregate, is an act *ultra vires* and, therefore, cannot become a cause of action against the corporation. The case cited is supported by the judgment of the Court of Queen's Bench in *Whitefield* v. *The Southeastern Railway Company*, 96 E. C. L. R. 115, in

which it was held that an action for a libel published of and concerning the plaintiff, by order of the defendants, would lie. The Court seemed to yield reluctantly to the authorities which hold that in an action for defamation malice must be alleged, but yielding to the doctrine, said, " this allegation may be proved by showing that the publication of a libel took place by order of the defendants, and was therefore wrongful, although the defendants had no ill will to the plaintiffs, and did not mean to injure them." In this instance, the motive, which is, upon principle and authority, an essential ingredient of the wrong, was held to be established by legal intendment, or in other words, was implied from the circumstance of the publication, without just cause or excuse, of the defamatory matter. In *Bromage* v. *Prosser*, 4 B. & C. 247, Mr. Justice Bayley, in discussing the proof of malice necessary to support an action of slander, said : " Malice, in common acceptation, means ill will against a person, but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." The objection to maintaining an action for libel against a corporation rests upon the ground that a corporation is an artificial creation, without a soul or animate body or moral sense, and consequently incapable of the emotions of love and hate; and hence it was very uniformly held, until a recent period, that an action for a wrong, in the constitution of which malice is an essential element, could not be maintained against a corporation aggregate as such.

In *Goodspeed* v. *The East Haddam Bank*, 22 Conn. 580, an action on the case for a malicious prosecution was held to lie against the defendant, a corporation. No principle of law is better settled than that malice is an essential ingredient in an action for malicious prosecution, which must, to sustain the action, be established in some mode sanctioned by the law on the subject. In the case here cited the defendant claimed that the remedy for the injury should be sought against the Directors of the bank, or the individuals, whoever they might have been, by whose agency the malicious

action was prosecuted, and not against the corporation; and it was argued that a corporation, from its very nature, could not entertain malice, and that no presumption could arise from the relation of the Directors of the bank to the corporation; that the action alleged to be without probable cause and malicious, was authorized by the corporation itself. And it was further argued that the Directors of a corporation are its agents, deriving their powers from its charter; and that for a willful and malicious act done by them in excess of their powers thus derived, the corporation could not be rendered liable. In discussing the questions involved, the Court say that in all the cases wherein it has been held that corporations may be subjected to civil liabilities for torts, the acts charged as such have been the acts of their constituted authorities, either the Directors, agents or servants employed by them; and then go on to distinguish between the character of agents, properly so called, and the Directors of corporate bodies, who are not mere servants, but really the controlling power of the corporation—the representatives acting and standing in the place of the interested parties—the mind and soul of the body politic and corporate, constituting its thinking and acting capacity; and cites the opinion of the Court in *Burrell* v. *The Nahant Bank*, 2 Met. 163, as expressing the true rule of appreciating the character and powers of Directors of corporations. In the case here referred to, the Court, by Mr. Chief Justice Shaw, say: " By the laws of these corporations and by the usage so general and uniform as to be regarded as a part of the law of the land, they have the general superintendence and active management of all the concerns of the bank, and constitute, to all purposes of dealing with others, *the corporation.* We think they do not exercise a delegated authority in the sense to which the rule applies to agents and attorneys," etc. In *Merrill* v. *The Tariff Manufacturing Company*, 10 Conn. 384, the Court held the defendant, which was a corporation, to be liable in exemplary or vindictive damages for an alleged malicious injury, and thereby necessarily determined

that a corporation can have motives and intentions and can manifest them in the management and conduct of its business.

The Directors or dominant body of the corporation is deemed to be the mind and soul of the corporate entity, and what they may do as the representative of the corporation the corporation itself must be deemed to do, and the motives and intentions of the Directors, manifested when a material fact in issue, are to be imputed to the corporation itself.

In *Goodspeed* v. *The East Haddam Bank,* the Court say : " The objection to the remedy of the plaintiff against the bank, in its corporate capacity, is not so much that as a corporation it cannot be made responsible for torts committed by its Directors, as that it cannot be subjected for that species of tort which essentially consists in motive and intention. The claim is, that as a corporation is ideal only, it cannot act from malice, and therefore cannot commence and prosecute a malicious or vexatious suit. This syllogism or reasoning might have been very satisfactory to the schoolmen of former days ; more so, we think, than to the jurist who seeks to discover a reasonable and appropriate remedy for every wrong. To say that a corporation cannot have motives and act from motives is to deny the evidence of our senses when we see them thus acting and effecting thereby results of the greatest importance every day. And if they can have any motive, they can have a bad one ; they can intend to do evil as well as good. If the act done is a corporate one, so must the motive and intention be." (22 Conn. 542.) In exposition of this doctrine the Court, in the same opinion, say : " We do not know that it has ever been adjudged that a corporation is civilly liable for a libel. But among the great variety and objects of these institutions it is probable that the newspaper press has come in for its share of the privileges supposed to be enjoyed under corporate powers. Proof of the falsehood of slanderous charges is evidence of malice, and which must, as in this case, be proved. But would it be endured that an association incor-

porated for the purpose suggested could with impunity assail the character and break down the peace and happiness of the good and virtuous, and the law afford no remedy except by a resort to insolvent and irresponsible type-setters, and for no better reason than that a corporation is only an ideal something, of which malice or intention cannot be predicated ?"

The Supreme Court of Michigan, in the recent case of *The Daily Post Company* v. *McArthur*, held a corporation for the publication of a newspaper liable for a libel published in its paper. (7 Am. Law Register, N. S., 462.)

The claim for immunity to associations of men constituting bodies corporate, is that corporations are mere legal entities which can only be conceived of and apprehended as existing in abstract contemplation ; and that being mere legal entities, they are utterly incapable of malevolence, and are without the power to will good or evil. If it be conceded that a corporation in its nature and essence exists in idea only, it must be admitted that in its manifested power there is always to be recognized the guiding and controlling hand of human intelligence, which is the agency by means whereof its purposes are carried into effect.

It is argued that a corporation with certain defined powers and privileges, and no implied powers, cannot do a wrong of the nature of that complained of, because the commission of such wrong by the representative authority of the body politic and corporate is not within the scope of the objects and purposes of the corporation, and therefore the stockholders, who may have had no malice toward the plaintiff and no immediate agency in the publication of the alleged libel, should not be required to respond in damages for the wrong done by the Directors. This argument carried to every legitimate consequence would result in entire immunity to a corporation for all wrongs which might be committed by its officers, agents and servants; because the objects and purposes of a corporation, ascertained from the organic law of its being, do not embrace the right and privilege of commit-

ting torts.  But the cases are numerous showing that for acts done by the agents of a corporation, *in delicto*, as well as *in contractu*, in the course of its business, and in their employment, the corporation is responsible, as an individual is responsible under similar circumstances.  (21 How. 210.) It may seem severe to impose upon innocent stockholders damages for the tortious acts of the Directors of the corporation, when it must be conceded that such acts are in excess of their authority; but it is no more so in fact than to render any other principal liable for the wrongs of his agent committed while in the exercise of his employment. It should be remembered that the stockholders select from their number the Directors, and intrust to their management the business of the corporation, and consequently assume the risk of loss from their misconduct; and it should also be remembered that it is a rule of law that if one of two innocent persons must suffer loss by the act of a third, he who put it in the power of the third person to do such act should be compelled to sustain the loss occasioned by its commission. The Directors are the chosen representatives of the corporation, and constitute, as already observed, to all purposes of dealing with others, *the corporation*.  What they do within the scope of the objects and purposes of the corporation, the corporation does.  If they do an injury to another, even though it necessarily involves in its commission a malicious intent, the corporation must be deemed by imputation to be guilty of the wrong, and answerable for it, as an individual would be in such case.

II. The plaintiff alleged in his complaint that he had the character of an honest and upright citizen, and had acquired the reputation of possessing excellent business qualifications as solicitor and agent for insurance companies, and was employed by the defendant in that business from early in March, 1865, until the latter part of August, 1866, when he was discharged from the defendant's service.  He further alleged that he did his duty faithfully while in the defend-

8

ant's service, and was discharged without just cause and of
pure malice on the part of the defendant, and for the pur-
pose of injuring his character and to prevent his obtaining
employment in any other insurance company; and then it is
averred that the defendant, well knowing that the plaintiff
was discharged by it without any good and sufficient reason,
but contriving and wickedly and maliciously intending to
injure the plaintiff in his good name and in his business as
such insurance agent and solicitor, and to prevent other com-
panies from employing him, and to have it believed that he
was not fit to be employed, and to cause it to be so suspected
and believed, "did falsely, wrongfully, unjustly and mali-
ciously compose, write and publish, and enter upon the books
of the defendant a certain false, scandalous, malicious and
defamatory libel, in writing of and concerning the said plain-
tiff as such agent and solicitor for the defendant; that is to
say : 'This company [the defendant meaning] for good and
sufficient reasons has resolved to dismiss D. D. Maynard [the
plaintiff meaning] from its service.'" The plaintiff then
averred that the defendant thereby meant and wished to
have it understood and believed that said plaintiff was dis-
missed because of dishonesty, want of integrity and ability
to discharge and perform the duties of such agent and
solicitor, and was wholly unfit and unworthy of employment.
The plaintiff further avers that the alleged libel was sent
and distributed by the defendant to the plaintiff's acquaint-
ances and to certain insurance companies in the City and
County of San Francisco, and that the same was read by the
officers of such companies, and that thereby he sustained
damage in the sum of fifty thousand dollars, for which he
demanded judgment.

It is not pretended that the words complained of as a libel
are so *per se*, for in themselves they cannot be said to import
anything of a defamatory character concerning the plaintiff.
What the defendent intended and understood them to mean,
and what they were understood by those to whom they were
published to mean, may be a proper subject of averment

and proof upon the trial, if a trial be had. The averment in the complaint is that the defendant meant and wished to have it understood and believed by the language of the resolution that the plaintiff was dismissed by the defendant because of dishonesty and want of ability to discharge and perform the duties of his occupation, and that he was wholly unfit and unworthy of employment; and further, that to consummate the wrong intended, the defendant caused the resolution to be published amongst the plaintiff's acquaintances, and communicated the same to the insurance companies named in the complaint. This may be sufficient to show what the defendant meant by the language used and published, but this alone is not enough. How the resolution was understood by those who read it, other than those who composed and published it, the complaint does not state. The plaintiff's acquaintances and the officers of the insurance companies amongst whom the resolution was circulated, if they read it, may not have understood it as importing anything to the discredit of the plaintiff. It is admissible in actions of slander and libel, to aver and prove that words alleged to be defamatory, and which have a covert or ambiguous meaning were intended and used with the object of defaming and were understood in a particular defamatory sense by those who heard them or read them, as the case might be. In *Woolnoth* v. *Meadows*, 5 East. 463, which was an action of slander, the words were of doubtful import, and the declaration, after the usual introductory matter and setting forth of the words, contained an express averment that they were uttered and published by the defendant with intent and meaning to convey, and that the same were by the persons in whose presence they were uttered and published, understood and believed to convey, a charge of the particular crime mentioned in the declaration. Lord Ellenborough, Chief Justice, in his opinion, speaking of the averment, said: "Upon a count so framed the plaintiff must have gone into other proof than the mere speaking of the words; and he must have not only shown that the defend-

HARVARD LIBRARY

ant's meaning was to impute a crime of that nature to the plaintiff, but that the words were so understood by the hearers."

The complaint does not aver that those who were furnished with the resolution or a copy of it read it, or that if they did they understood it to impute to the plaintiff want of honesty or business capacity. The rule is that the allegations and proofs must correspond, and the consequence of the rule is another, which is, that evidence of a matter or fact essential to the support of the action cannot be heard unless the complaint or other proper pleading contains an averment of such essential matter or fact. Upon the subject of showing by pleading what was intended by the alleged libelous words and in what sense they were understood by those to whom they were published, we may, in addition to the case cited, refer to *Goodrich* v. *Woolcott*, 3 Cow. 239; *Andrews* v. *Woodmansee*, 15 Wend. 234; *Gibson* v. *Williams*, 4 Wend. 320; *Dexter* v. *Taber*, 12 John. 239; and *Peake* v. *Oldham*, 1 Cow. 275. All these authorities bear more or less upon the questions considered, and may be read with profit by those who are interested in mastering this branch of the law.

We are of the opinion the demurrer was properly sustained and that the judgment should be affirmed.

Judgment affirmed.

Mr. Justice SHAFTER, being disqualified by interest, did not participate in the decision of this case.

Mr. Justice SANDERSON expressed no opinion.