[No. 5663.]

## SMITH ET AL. v. SCHLINK, ADMR.

1. **Pleading — Amendment** — Under an order remanding a cause to the inferior court "for further proceedings according to law," the trial court may allow such amendment of the pleadings as justice requires.—P. 211.

2. **Exceptions — When Required** — An order allowing an amendment of the complaint will not be reviewed in the absence of a bill of exceptions.—P. 212.

3. **Contempt — Disobedience of Decree Merely Irregular** — A judgment within the issues, however irregular, is not void, in such sense that disobedience of its mandate will not constitute contempt.—P. 212.

An attorney who advises his client to disobey an injunction is guilty of contempt.—P. 213.

*Error to the Denver District Court.*
*Hon. Booth M. Malone, Judge.*

Mr. H. B. O'REILLY, for plaintiffs in error.

Messrs. STUART & MURRAY, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiffs in error, having been found guilty of contempt of court and fined, prosecute this writ of error to reverse the judgment in the contempt proceedings.

The first chapter of this litigation, in the appellate courts of this state, is written in *Smith v. Schlink,* 15 Col. App. 325. It was there held that the plaintiff below, in dismissing that part of his complaint sounding in damages, eliminated therefrom all allegations which stated a cause of action upon which any proof could be made, or on which any decree quieting title or granting a permanent injunction could be granted; and for that reason the court reversed the judgment.

The court of appeals, speaking as to the title of the property which is the subject of this litigation, at pages 331, 332, makes this positive declaration:

"We do not believe it lies with the Smiths at this time, or at any time hereafter, to question the validity of that decree or the character of the proceedings, or the suit which resulted in the judgment, or the legality or sufficiency of the finding in any litigation which is now pending between the parties. We are likewise quite clear that there is no way known to the law by which the Smiths can now assail that decree. It is, as between these parties, *res adjudicata.* That suit was properly brought in a court of competent jurisdiction, which had jurisdiction by service and appearance of the parties, and however erroneous that decree may have been, when once it was entered and remained unexcepted to, unassailed and unattacked, it must always remain as between the Smiths and Schlink a final adjudication of the title to lot No. 29. It conclusively, whether legally or not if it had been properly assailed, settled Schlink's title to lot No. 29, and the Smiths cannot now or hereafter, in any suit of which we can conceive, in any forum of which we know, or by any process of which we are advised, attack the legality and conclusiveness of that adjudication."

It is unnecessary to here repeat the facts as

they appeared upon the record in that case, as they sufficiently appear in the opinion of the court of appeals.

By the judgment of the court of appeals the cause was remanded to the district court for further proceedings, according to law. Thereafter, and on June 24, 1901, plaintiff, by leave of court, filed an amendment to his amended complaint restoring thereto all allegations as to damages theretofore withdrawn, and as supplementary thereto alleged additional matters upon which he predicated an application for a preliminary injunction, and a preliminary injunction was granted. Then follow a number of interlocutory motions and orders unnecessary to be stated.

December 30, 1901, defendant answered the amendment to the amended complaint. Again follow a number of interlocutory motions and orders. And on January 26, 1903, all parties being present or represented, quoting from the abstract:

"This cause coming on to be tried to the court without a jury upon the petition of intervention of Annie O'Toole; and also for a finding as to the damages sustained by plaintiff in the original cause, judgment having been heretofore entered herein according to law; thereupon comes the evidence, continued through January 29, 1903, and case continued for argument to February 5, 1903."

And again, quoting from the abstract:

"March 2, 1903, judgment rendered and entered of record for $1 damages and costs.

" 'It is also ordered, adjudged and decreed that the injunction heretofore issued on behalf of plaintiff and against defendants herein be revived, reinstated and made absolute and perpetual, and defendants are hereby ordered and directed forever to refrain and desist from any further trespasses upon or

against lot 29, block 33, etc., and from any and all attempts, direct or indirect, to claim said premises or to take possession of the same; and defendants are perpetually prohibited from claiming and asserting any right or title in themselves or either of them, to any portion of said property, or against the title and possession of the plaintiff and his grantees, near or remote.' "

This decree was not excepted to, nor were any exceptions saved to any of the numerous rulings adverse to the plaintiffs in error; and no bill of exceptions is filed in this court showing the evidence taken on the final hearing.

September 30, 1905, defendant in error, Schlink, moved the court for an order upon plaintiffs in error, William H., Mary and Thurston H. U. Smith, and their attorney, Mr. Henry B. O'Reilly, to show cause why they should not be punished for contempt of court for the willful disobedience of the orders and injunctions of the court, basing the application upon the records in this cause and the affidavit of Mr. Murray, of counsel for defendant in error. This affidavit, with great particularity, sets forth the orders and judgments of the court alleged to have been disobeyed, and the acts of plaintiffs in error constituting such disobedience, including therein verbatim copies of notices served and motions filed in the county court and justice courts, in various attempts to oust defendant in error and his grantees, direct and remote, from the premises in controversy; such affidavit occupying more than forty folios of the printed abstract.

The acts of plaintiffs in error constituting the contempt, briefly summarized, were as follows:

That on or about July 1, 1905, plaintiffs in error served, or caused to be served, on defendant in error's grantee in possession of the property, a notice

to vacate said property; that on or about the same day they filed in the county court of the city and county of Denver their written application for a *procedendo* to direct a justice of the peace to issue a writ of ouster for the possession of said property, which application was denied; that on the 7th day of September, 1905, they renewed their application for a *procedendo* before another judge of the county court, which application was also denied; and that on the 28th day of September they filed with a justice of the peace of the city and county of Denver their written application for a writ of restitution, and served written notice upon defendant in error that they would demand the issuance of said writ on the 30th of September, 1905.

In response to the citation issued and served upon defendant in error, defendant in error and respondent, Mr. O'Reilly, filed an answer, which we find it impossible to condense, and therefore give it in full:

"For answer to the citation that he show cause why he should not be punished for contempt of this court because of his avowed purpose, and action taken to secure and to enforce a certain writ or restitution against said Schlink in his individual capacity, and against his attorneys Thomas B. Stuart and Charles A. Murray, as also against Martin O'Toole, and those now in possession under him, in flagrant disregard, as it is charged, of numerous injunctions and decrees of this court, of the decision of the court of appeals herein, and of the recent rulings and 'stinging rebukes' of the county court, respondent O'Reilly respectfully submits, and here shows to the court from the records and proceedings of said courts:

"1. That as a sworn officer of this court, and as the attorney for Wm. H. Smith, he declares it to

be not alone his right, but his imperative duty, so to do, and to persist therein with all the professional zeal and capacity he possesses, until simple justice and the law of the land has voice and effect.

"2. That the judgment in favor of said W. H. Smith, rendered July 28, 1898, adjudging said defendants, Schlink, Stuart, O'Toole and Murray, guilty of the forcible entry of lot 29, block 33, Case and Ebert's addition, and of the dwelling thereon, and of its forcible detainer since October 28, 1897, was never appealed from.

"3. That their attempted and pretended appeal therefrom was, by the county court, dismissed and *procedendo* ordered, June 24, 1901, notwithstanding every plea and device, known to the law or equity, was imploringly invoked to stay the hand of justice.

"4. That from said final action of the county court, they prayed, and were allowed an appeal to the supreme court, conditioned upon their filing, within twenty days, approved undertakings therefor, with stay of *procedendo* meantime.

"5. That no attempt was ever made to perfect, or to prosecute, said appeal.

"6. That said judgment has never been otherwise assailed or questioned in any manner, or for any cause, in any other court of appellate, superior or of any jurisdiction whatever, in the premises.

"7. That said judgment, and its rigorous enforcement, is now beyond the jurisdiction, or control, of any court, state or national.

"8. That the six injunctions, and the five decrees, awarded by this court in this cause prohibiting said W. H. Smith from entering upon said lot, or claiming possession thereof, or title thereto, were, and are, absolutely void, as without basis or warrant whatever, at law or in equity, as so clearly shown

and demonstrated by the court of appeals in its opinions herein.

"9. That in securing said injunctions and decrees, said Schlink and his attorneys deliberately deceived, and imposed upon, this court by concealment of the actual facts, and by the grossest misrepresentations and misstatements under oath, as clearly shown by the pleadings and records herein referred to and relied upon.

"10. That this cause, and every issue therein, legal or equitable, was fully and finally adjudicated and disposed of by the court of appeals in December, 1900; and that since then there has been no such cause lawfully pending in this court, save for the payment of the costs adjudged against plaintiff by said court of appeals.

"11. That the four injunctions and two decrees since then awarded by this court in this cause against said W. H. Smith, his wife and son, are in direct disregard of said decision of the court of appeals herein, of repeated decisions of said court, and of the supreme court of this state and of the United States, in like cases, and of every rule and principle of law as of equity, and common sense and justice.

"12. That said Schlink, an administrator of the estate of Joseph P. Schlink, in his individual capacity, or otherwise, never acquired any title whatever to, or interest in, said lot 29, possessory or otherwise, as shown by the records of the county court in the suit wherein and whereunder he claims title.

"13. That if any title or claim to said lot 29 he ever had—which respondent absolutely and unqualifiedly denies—said Schlink, in person, and as administrator, sold and conveyed the same long years past and retained no interest therein, claim to, or possession thereof.

"14. That as administrator of the estate of Joseph P. Schlink, who died in November, 1894, he never had, or could have, any interest in, or right, to question the validity or enforcement of the judgment of forcible entry and detainer in favor of Wm. H. Smith and against him—Schlink—in person, and said Stuart, O'Toole and Murray, rendered July 28, 1898.

"15. That in their suit of Schlink, as administrator, against Wm. H., Mary and Thurston H. U. Smith, there was no possible jurisdiction to enjoin the enforcement of said judgment of ouster against Schlink personally, Stuart, O'Toole and Murray, none of whom were parties thereto.

"16. That said judgment of ouster has never been questioned herein, or its enforcement sought to be stayed, because of any fact, circumstance or cause arising after the rendition thereof; and that, by force of the statutes, all errors or irregularities therein prior thereto, if any there be, have been specifically waived.

"17. That May 23, 1905, said O'Toole, Schlink, Murray and Stuart, by their attorney, in open court, consented that *procedendo* issue out of said county court to enforce said judgment of ouster against them; that *procedendo* was accordingly issued and exhibited to the justice to whom it was directed, and, on said May 23, 1905, said justice was requested by, and in behalf of said defendants, to make an order herein; and that said defendants have since contended, under oath, that said cause was thereby remitted to said justice court, that said court ever since had sole jurisdiction thereof.

"18. That by force of the final adjudication of said county court that no appeal was ever perfected from said judgment of said justice; and still further, by the issuance and service, as aforesaid, of

said *procedendo,* it has become not alone the right, but the duty, of said justice to issue and to enforce said writ of restitution.

"19. That through all this protracted, expensive, and most burdensome litigation, respondent and his clients have ever been upon the defensive against the most unjust, unwarranted, and infamous assaults of said Schlink and of his said attorneys.

"20. That though thoroughly convinced said injunctions and decrees were as unwarranted in law as they were iniquitous in fact, yet has he and his clients ever submitted thereto with gritting teeth, awaiting the slow and uncertain measure of appellate justice.

"21. That though he has never feared, nor failed to express his supreme contempt therefor, and to denounce in no uncertain terms the infamous Star Chamber methods by which they were secured, yet has it ever been done face to face, in open court, and in the presence of his adversaries and of their counsel.

"22. And finally respondent declares that he has never disregarded or questioned a single writ, order, judgment or decree herein, save as prescribed by law in open court, or by appeal to a superior tribunal.

"And now having fully answered all that has been so falsely charged against him as contempts of the court, yet declaring it to be his fixed purpose to exhaust all his professional resources to the end that said writ of restitution be issued and enforced, and that said Schlink, Murray, O'Toole and Stuart be made to smart with the whip-lash of justice for the great wrongs, so cruelly and wickedly inflicted upon his clients, with the unfortunate concurrence of this court, he asks to be hence discharged.

"In support hereof he relies upon, and will submit, the records of all causes and matters referred to; and will offer such oral evidence as may be pertinent.

"HENRY B. O'REILLY,

"Respondent."

This answer was verified.

The other respondents filed a demurrer to the citation, which, having been overruled, the answer of Mr. O'Reilly was allowed to stand as the answer of all respondents. Thereafter, a motion to strike the answer was interposed, upon the ground that it denied no facts set forth in the application, but was an admission of everything alleged, and that it was malicious and slanderous of the court in which it was filed, and of the court of appeals. This motion to strike was sustained, and respondents, electing to stand by their answer and refusing to plead over, the court found that respondents had repeatedly and willfully disobeyed the orders, decrees and judgments of the court, particularizing the acts which constituted such disobedience, concluding its findings as follows:

"The court further finds that the respondent H. B. O'Reilly has been, in all said proceedings, the attorney and legal adviser of his co-respondents, that he has counseled, advised and conducted all said proceedings on their behalf, and that he now openly declares in this court that he and his co-respondents still intend to continue their efforts to obtain said writ of restitution for said property, notwithstanding the said orders, decrees and injunctions of this court, and that the said conduct of respondent has grievously prejudiced the rights of the plaintiff in the matters aforesaid."

Judgment was thereupon entered imposing a

fine of $300 upon each respondent, and committing them to jail until the fines were paid or satisfied.

Exceptions were saved and preserved by bill of exceptions to the rulings of the court upon the demurrer, the motion to strike the answer, and the judgment assessing the fines, and also upon the refusal of the court to grant a jury trial, demanded by respondents.

Counsel for plaintiffs in error, for himself and his clients, plants himself squarely upon the proposition that all proceedings in the court below, subsequent to the decision of the court of appeals in 15 Col. App. 325, December 18, 1900, are absolutely void.

Counsel's position is thus stated in his brief:

"It will not, therefore, be necessary to consider or to discuss the proceedings subsequent to that date (Dec. 18, 1900); they are all absolutely void. At every stage of these proceedings the Smiths—appellants—protested most vigorously and earnestly against these abuses without avail."

While it may be true that plaintiffs in error protested most vigorously and earnestly against the proceedings in the court below, there is nothing in the record here presented to indicate that any legal and orderly steps were taken by them to protect themselves against any errors the court might have committed; so far as this record shows, the proceedings in the court below preliminary to the judgment, which, by their answer they admit they violated, were not in any manner challenged, objected to or excepted to. No appeal, writ of error or other proceeding was taken to reverse, set aside or annul the judgment, and it stands to-day unassailed and unassailable by any legal process of which we have knowledge.

In support of the position taken by counsel for plaintiffs in error, our attention is invited: (1) To the original complaint and injunction and the summons of October 28, 1897; (2) to the amended complaint of June 6, 1898; (3) to the voluntary action of plaintiff in dismissing all claims for damages August 8, 1898, and the final judgment of dismissal thereof August 9, 1898.

The brief of counsel for plaintiffs in error purports to set forth the substance of the foregoing pleadings and proceedings, but the abstract of record in this case does not contain the above pleadings, and we are unable to determine from anything in this record what they are, or what force or effect they might exercise in a determination of this matter. In the present condition of this record it is impossible to say what the allegations of the pleadings were, or what issues were presented thereby; and no evidence being presented by bill of exceptions, it is likewise impossible to say whether or not the judgment which plaintiffs in error are charged with having violated was within the issues presented, or is supported by the evidence.

Counsel's contention that this cause was finally and forever disposed of by the judgment of the court of appeals December 18, 1900, is untenable. As above stated, the cause was "remanded to said district court for further proceedings, according to law." Under this mandate the trial court was authorized, and it was its duty, to permit such amendment of the pleadings as the ends of justice required, and its action will not ordinarily be disturbed.— *Horn v. Reitler*, 15 Colo. 316.

If the trial court commits error in allowing amendments of pleadings after a case is reversed and remanded by an appellate court, its action may be reviewed on appeal or error, if exceptions to such

rulings are duly preserved.—*People v. District Court,* 32 Colo. 166.

No exceptions were taken to the ruling of the trial court in permitting the amendment of the amended complaint, wherefore plaintiffs in error cannot now complain of such ruling. That the court had jurisdiction of the parties and the subject-matter cannot be questioned. This being true, and it not appearing that the judgment was not within the issues presented by the pleadings, however erroneous it may be, the judgment cannot be held to be void, so as to bring this case within the rule that disobedience of a void decree does not constitute contempt of court.—*Newman v. Bullock,* 23 Colo. 217; *Smith v. People,* 2 Col. App. 99; Rappalje on Contempts, § 33.

Counsel concedes that defendant in error might have prosecuted, in any court of competent jurisdiction, his claim for damages; but strenuously insists that he could not do so in this cause, and that the opinion in 15 Col. App. 325 supports this position. The last paragraph of that opinion is, in part, as follows (336):

"We have thus, as we think, fully disposed of all the matters which have been presented to our attention, and which the parties have any right to call on us to decide. So far as we can, we have settled the question of title between the parties *and simply permit the appellee to recover what, if any, damages he has sustained.*"

The above expression of the court of appeals, the final judgment entered by that court, and the authorities above cited, sustain the action of the trial court in permitting an amendment of the pleadings, and proceeding to trial on the issues thus presented, after the cause was remanded to the court below. There is nothing in the opinion of the court of ap-

peals which conflicts with this conclusion. The numerous quotations from that opinion, found in counsel's brief, have reference solely to the condition of the pleadings as they were found after all allegations with reference to damages had been stricken therefrom, and are inapplicable to the issues joined upon the amended pleadings.

The record here presented has been most carefully examined to discover if possible any ground upon which the decree granting the permanent injunction might be held void. Our efforts in this direction have not been confined to the abstract of record, but we have gone to the original transcript. No reason or excuse for so holding has been discovered, and none exists.

We might have rested our conclusion in this case upon the fact, that no exception was saved to the decree which plaintiffs in error were found guilty of having violated, and no writ of error, appeal, or other proceeding has been taken to in any way modify or set aside that judgment; but, in our anxiety to protect a member of the bar of this court from a conviction of contempt of court, and himself and clients from the judgment rendered against them, we have most carefully examined and scrutinized the record here presented, and the proceedings of the court leading up to and culminating in the final decree, and from such examination and scrutiny are forced to the conclusion, that plaintiffs in error cannot be afforded any relief by this court, from the penalty imposed by the court below, and are compelled to affirm the judgment of the court below.

*Affirmed.*

Decision *en banc.* Mr. JUSTICE CAMPBELL not participating.

Mr. JUSTICE GODDARD dissents.