[No. 28159. *En Banc.* July 17, 1941.]

ELIZABETH H. HANLEY, *Appellant,* v. JOE E. MOST *et al.,* *Respondents.*[1]

[1]Reported in 115 P. (2d) 951.

*Preston, Thorgrimson & Turner* and *Colvin & Rhodes,* for appellant.

*McMicken, Rupp & Schweppe, J. Gordon Gose,* and *J. Speed Smith,* for respondent Joe E. Most.

*E. B. Hanley, Jr.,* and *Padden & Moriarty,* for respondent E. B. Hanley, Sr.

MAIN, J. — The petitioner, Elizabeth H. Hanley, brought an action seeking to enjoin her husband, E. B. Hanley, Sr., from giving away, or otherwise disposing of, any of the property of their marital community, and to enjoin certain other defendants, including Joe E. Most, from inducing Mr. Hanley, Sr., to commit any such acts; and, also, to set aside two voting trust agreements covering the stock in The Copper River Packing Company and the Pleasant Creek Mining Company.

This proceeding has the same title and number as the decision of this court on the merits as to the voting trust. It precedes this one, and in it the facts are fully stated.

Upon filing the complaint, Mrs. Hanley obtained an order temporarily restraining the disposition of the property by Mr. Hanley, Sr., and also restraining the other defendants from further exercising any power under the voting trust agreements. By stipulation of the parties, the temporary restraining order was continued, and converted into a temporary injunction as to Mr. Hanley, Sr., and Mr. Most, to remain in force until the further order of the court.

Some days after the court had announced its decision, the parties appeared before the court for the purpose of having the amount of the appeal bond fixed. The court thereupon announced that it would be fixed at five thousand dollars, if the entire decree was appealed from; but, if only that portion which

referred to giving gifts or transfers was appealed from, the bond would be in the sum of one thousand dollars.

At the time the decree was entered, Mrs. Hanley immediately gave notice of appeal and filed a supersedeas bond in the sum of one thousand dollars, to keep the temporary injunction in effect until the case was decided upon the appeal. Some days after the appeal was perfected, Mr. Hanley, Sr., contracted to sell to Mr. Most sufficient stock in the packing company to give Mr. Most the voting control, and also contracted to sell to him the stock in the mining company.

The temporary injunction contained this paragraph:

"IT IS FURTHER ORDERED that the defendant Joe E. Most be and he is hereby restrained and enjoined from accepting any gifts or transfers of the assets of the community consisting of the plaintiff and defendant E. B. Hanley, Sr. until the further order of this court."

After learning of these contracts, Mrs. Hanley petitioned this court for an order to show cause why Mr. Hanley, Sr., and Mr. Most should not be punished for contempt for violation of the injunction, and asked also that the transfers be set aside in the injunction proceeding. The show cause order was issued, and the matter came on for hearing at the time the case on the merits was heard in this court upon appeal.

Prior to the hearing upon the appeal, Mr. Hanley filed what he called a "confession on appeal," and asked that the judgment appealed from as to him be reversed. As a result of that, no further effort was made to pursue the contempt proceeding as against him.

■■ Mr. Most first contends that the injunctive order, properly construed, only covers the matter of gifts, and does not cover transfers. To support this contention, he relies upon the clerk's minute entry, which mentioned only gifts, a stipulation of counsel

correcting an error therein, and upon the affidavit of one of his counsel as to what occurred when the parties came before the court to have the amount of the bond fixed. This affidavit, on material matters, was controverted by the affidavit of Mrs. Hanley's counsel.

This court has held a number of times that matters occurring in the presence of the court must be shown by the court's certificate, and cannot be shown by affidavits; *Loy v. Northern Pac. R. Co.*, 77 Wash. 25, 137 Pac. 446; *State v. Brady*, 138 Wash. 421, 244 Pac. 675; *State v. Knapp*, 194 Wash. 286, 77 P. (2d) 985. The clerk's minutes cannot be used for the purpose of contradicting or impeaching the order of the court. 22 C. J. 1082, § 1411; *Hartson v. Dill*, 151 Cal. 137, 90 Pac. 530. We see nothing in the stipulation of counsel that in any way would tend to modify the order of the court.

We now come to the question of whether the court's order as to transfers was violated by making the contracts mentioned. One of the contracts recites that Mr. Hanley, Sr., agrees to sell, and Mr. Most agrees to purchase, a specified number of the shares in the packing company. The other contract contains similar language with reference to the stock of the mining company. In each of the contracts, it is provided that the stock shall be placed in escrow along with the contracts, and that the title to the stock shall not pass until it has been fully paid for. In each contract, there is a forfeiture provision in the event the contract is not carried out. As to whether these contracts should be construed as transfers, from their literal language, there may be some question, but what was done in the way of making the purchases is against the spirit of the court's order.

In the case of *Blakiston v. Osgood Panel & Veneer Co.*, 173 Wash. 435, 23 P. (2d) 397, it was said:

"A party enjoined must not do the prohibited thing nor permit it to be done by his connivance, nor effect it by trick or evasion. The order of the court must be obeyed implicitly, according to its spirit, and in good faith. *Weston v. John L. Roper Lumber Co.,* 158 N. C. 270, 73 S. E. 799, Ann. Cas. 1913D, 373."

The next question is whether, in this proceeding, the contract should be set aside because of disobedience to the injunctive order.

It is a general rule, supported by the weight of authority, that, where, upon a hearing of the cause, it appears that the injunction should never have been granted to the person complaining of its violation, he has not been injured, and is not entitled to have the transaction set aside in a contempt proceeding, although this is to be taken into consideration in fixing the degree of the punishment.

In the case of *Deeds v. Gilmer,* 162 Va. 157, 174 S. E. 37, the court, after pointing out that, in appropriate cases, the violator may be punished by forcing him to maintain the *status quo* as it existed before the violation, said:

"If the violation of the injunction has not damaged any property or rights or prevented the enforcement of a lien which, under the pleadings and proof in the injunction cause, the complainant was legally entitled to have protected, preserved, or enforced by the injunction, he has not been damaged by its violation, and is not entitled to have remedial punishment imposed upon the violator. To state the last proposition in a different way—where, upon a hearing of the cause, it appears that the injunction should never have been granted to the person complaining of its violation, because, under pleadings and proof in the injunction cause he was not entitled to have injunctive relief, he has not been injured or damaged by the violation thereof, and is not entitled to have remedial punishment imposed upon the violator; and in such cases the

court will not impose upon the violator a remedial punishment. This, however, does not affect the liability of the violator to punishment for criminal contempt. [Citing many authorities.]"

While the court there uses the words "criminal contempt," as stated earlier in the opinion, those words are used only for the purpose of distinguishing a contempt where the violator of an injunction is punished by fine from one where he is punished for such contempt by restoration of the *status quo.*

Even though we hold that Mr. Most had violated the spirit of the court's order at least, and there is a question whether, under the facts, he violated the language of the order, and in view of the further fact that we are sending the case back to the superior court to try out the question of the value of the property, as compared with the price contracted to be paid, we do not believe that this case is one in which we should order the restoration of the *status quo.* If the stock was sold for its value, Mr. Hanley, Sr., was acting within his right as manager of the community property; and, if it should be determined, in an action brought for that purpose, that the stock was sold for its value, Mrs. Hanley would not have been injured by the transaction.

In *Gompers v. Buck Stove & Range Co.,* 221 U. S. 418, 55 L. Ed. 797, 31 S. Ct. 492, 34 L. R. A. (N. S.) 874, it was said:

"When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled—of course without prejudice to the power and right of the court to punish for contempt by proper proceedings."

While, in the cases of *People v. Tool,* 35 Colo. 225, 86 Pac. 229, 117 Am. St. 198, 6 L. R. A. (N. S.) 822, and *Elizabethtown, L. & B. S. R. Co. v. Ashland & C. St. R. Co.,* 94 Ky. 478, 22 S. W. 855, each ordered the

restoration of the *status quo,* the facts in those cases are very different from the facts here presented, and the consequences of restoring the *status quo* were not as grave as they would be in this case if that order was made. Mr. Hanley, Sr., not now being on friendly terms with Mr. Most, there would be no possibility of the contracts ever being reexecuted if they were set aside in this proceeding.

The case of *State ex rel. Union Machinery & Supply Co. v. Thompson,* 99 Wash. 478, 169 Pac. 980, is distinguishable. There, the defendants were held to be in contempt, and each of them was fined one hundred dollars and costs. But, in view of the unsatisfactory condition of the record, it was provided that they could purge themselves of the contempt by a tender of the property, together with their consent that the same might be removed from their premises by the plaintiff.

It does not appear to us that it is necessary to further review the numerous cases cited in Mrs. Hanley's brief.

We shall now consider the word "gifts," as it appears in the injunctive order. Mrs. Hanley contends that the stock was sold at very much less than its real value; that the difference between the purchase price and the real value thereof was a gratuity and, in effect, a gift; and that, by receiving the stock, Mr. Most was guilty of contempt of that provision in the order prohibiting gifts. The parties present this question as to the value of the stock by affidavits, Mrs. Hanley's affidavit showing that the stock was purchased for very much less than its value; on the other hand, the affidavits presented by Mr. Most say that the purchase price was its real value.

We think that this matter of whether the stock was purchased for its real value or for less should not be heard on affidavits in this court, but should be deter-

mined in an independent action in the superior court where all relevant and material evidence can be presented. It is true that, so far as we are informed, no action for that purpose has been begun as yet, but it seems very plain that, if this court does not set aside those transfers, an action will be begun. Mr. Hanley is now antagonistic to Mr. Most and claims that he has been overreached and defrauded.

In view of what has just been said, we are of the opinion that it would be better to defer the matter of punishment for contempt of Mr. Most for violating that provision of the order prohibiting transfers until it is determined whether he also violated the gift provision.

If the superior court should find that the stock was sold for a substantial sum less than its real value, and should further find that this discrepancy constituted a gratuity or gift, then, after disposing of that question, the court will impose such a fine upon Mr. Most for the violation of the transfer provision of the order as in its judgment the facts call for. On the other hand, if the court should conclude that there was no gratuity or gift, by reason of difference in value between the contract price and the real value, then, in that event, it will impose such a fine upon Mr. Most as it thinks the violation of the transfer provision of the order calls for.

The cause will be remanded to the superior court to proceed as herein indicated.

MILLARD, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

STEINERT, J. (dissenting in part)—While I am in accord with much that is said in the majority opinion, I am of the view that the entire matter should be remanded to the superior court for the purpose of having that court determine, under all the evidence to be submitted to it, whether respondent Most is, or is not, guilty of contempt of court for violating the order, in

spirit or in fact, and to impose, or decline to impose, a fine according to the court's determination of the primary question of contempt.

ROBINSON, C. J., concurs with STEINERT, J.

BLAKE, J. (dissenting)—While our own case of *State ex rel. Union Machinery & Supply Co. v. Thompson,* 99 Wash. 478, 169 Pac. 980, is not directly in point, it leans toward the minority rule as laid down in *Elizabethtown, L. & B. S. R. Co. v. Ashland & C. St. R. Co.,* 94 Ky. 478, 22 S. W. 855, which is that, under no circumstances, will a party be permitted to retain an advantage gained in violation of the terms of an injunction. The only effective process for purging a contempt of an injunctive order is to restore the *status quo* as was done in *State ex rel. Union Machinery & Supply Co. v. Thompson, supra.* This is an original proceeding in this court, and such an order should be entered here.

I dissent.

BEALS, J., concurs with BLAKE, J.

### ON PETITION FOR REHEARING.

[*En Banc.* September 29, 1941.]

PER CURIAM.—After the opinion on the contempt matter in this case was filed [*ante* p. 474, 115 P. (2d) 951], Elizabeth H. Hanley filed a petition in which she asked to have the opinion clarified in one respect and modified in another. To this petition an answer was called for. E. B. Hanley, Sr., in his answer, supported the petition of Mrs. Hanley. Joe E. Most answered, and stated that the opinion was clear, and that he saw no reason for "attempting to clarify that which is already clear." We think the opinion, as written, is clear, but to avoid any controversy over the matter in the future, we will attempt to clarify it.

Mrs. Hanley may bring any kind of an action that she sees fit, and it was not the intention of the opinion to limit the scope of that inquiry. Mr. Hanley may bring any kind of an action that he sees fit, and it was not the intention of the opinion to limit the scope of that inquiry. Likewise, Mr. and Mrs. Hanley may join in bringing any action that they see fit, and it was not the intention of the opinion to limit the scope of the inquiry. Primarily, the scope of the inquiry in any action that may be brought is for the superior court in the first instance.

What has been said herein is limited to the opinion in the contempt proceeding and does not in any way bear upon, or have any reference to, the opinion on the merits.

In all other respects, the opinion will be adhered to.

