[S. F. No. 19329. In Bank. Feb. 25, 1958.]

SIGNAL OIL AND GAS COMPANY (a Corporation) et al., Respondents, v. ASHLAND OIL AND REFINING COMPANY (a Corporation) et al., Appellants.

John L. Bradley, Robert E. Burns, Crimmins, Kent, Draper & Bradley, Park Chamberlain, Reginald L. Vaughan, Varnum Paul and Vaughan, Paul & Lyons for Appellants.

James D. Adams, Owen Jameson, Walker Lowry, McCutchen, Thomas, Matthew, Griffiths & Greene and Warner W. Gardner for Respondents.

SCHAUER, J.—Defendants-appellants Ashland Oil and Refining Company (hereinafter referred to as Ashland) and American Independent Oil Company (hereinafter termed American or American Independent) appeal[1] from an order granting a preliminary injunction restraining them from acting or recognizing action taken contrary to a certain so-called "Agents' Agreement," and from giving effect to certain actions taken at a meeting of American's board of directors held on December 16, 1954. We have concluded that, for reasons hereinafter stated, the order should be reversed insofar as it enjoins noncompliance with the Agents' Agreement, but affirmed insofar as it enjoins recognition by American of the actions taken at the December 16, 1954, board meeting.

American is a Delaware corporation formed in 1947 for the general purposes of exploration, extraction, processing, and sale of oil and gas and related products. The principal office of the corporation is in San Francisco, California, and the principal activities of the corporation are carried out in the geographic region generally referred to as the Middle East. The capital stock of American is held by 10 shareholders. Each shareholder elects a certain number of the 15 members of American's board of directors in the approximate ratio which the number of shares owned by such shareholder bears to the total number of shares issued and outstanding. Thus Phillips Petroleum Company (hereinafter termed Phillips) elects four directors; Signal Oil and Gas Company (Signal), Hancock Oil Company (Hancock) and Ashland each elect two directors; Ralph K. Davies (Davies), J. S. Abercrombie (Abercrombie), Deep Rock Oil Company (Deep Rock) and Sunray Oil Corporation (Sunray) each elect one director; and Globe Oil and Refining Company (Globe) and its apparent subsidiary Lario Oil and Gas Company (Lario) together elect one director.

On March 30, 1950, Signal, Hancock, Ashland, Davies, Globe, and Lario, who together hold about 54.5 per cent of American's stock and who elect eight directors, entered

[1]The other named defendants in this action, R. S. Blazer and S. M. Burnam, are directors of American elected by Ashland, which is a major stockholder in American. Neither Blazer nor Burnam are residents of California, and neither has been served with process herein. Burnam has filed an affidavit "in opposition to motion for preliminary injunction," but Blazer has made no appearance whatsoever. American has not filed an answer to the complaint, but has appeared and actively participated in all stages of the action to date.

into an agreement (sometimes hereinafter termed the Agents' Agreement) with eight persons designated as agents. These agents were in fact the respective directors of American elected by these stockholders. The stated purpose of the Agents' Agreement was "to provide a means whereby the parties hereto may initiate or maintain in effect any general policy, plan, or program affecting American . . . which said parties should determine to be to their joint benefit, interest, and advantage, and to be to the best interests of all stockholders of American . . ." The Agent's Agreement provided, insofar as here pertinent, that the shares of American's stock held by the signatory stockholders would be endorsed over to the agents, who would place the stock certificates in escrow, and who thereafter for the 10-year term of the agreement would "have the sole and exclusive voting power" of such stock; that the agents should consult and confer with each other relative to casting their votes, but that the "vote of the Agents shall always be exercised as a unit, on any matter on which a vote of the stockholders is called for, as any seven of said Agents shall direct and determine"; that in the event seven agents could not agree the matter would be submitted to an arbitrator chosen pursuant to an outlined procedure.

On December 9, 1954, at a meeting in Chicago of American's board of directors, one of the directors elected by Ashland moved that another board meeting be held in Chicago on December 16, 1954, for the purpose of considering certain amendments to American's by-laws. The substance of the principal changes to be made by these amendments was that (1) the directors be given power to remove any corporate officer (including the president,[2] who theretofore could be removed only for cause) "summarily without cause"; (2) the office of chairman of the board be created; and (3) the stockholders' meetings be held in Dover, Delaware, rather than in San Francisco. The six directors representing Signal, Hancock, Davies, Globe, and Lario opposed the motion, but the directors elected by Ashland refused to join this opposition and took the position that their action was not contrary to the Agents' Agreement. The proposal to hold the December 16 meeting for the stated purposes was adopted by a nine to six vote.[3]

---

[2] The president of American has since its organization been Ralph K. Davies, one of the plaintiffs herein.

[3] It appears that shortly before this proposal was actually introduced at the directors' meeting, the meeting was recessed, and during this re-

On December 14, 1954, a meeting of the agents under the Agents' Agreement was held. At this meeting the representatives of Ashland did not agree to proposals of the other representatives to postpone the December 16 meeting and to submit the proposed by-law amendments to arbitration.

On December 15, 1954, Signal, Hancock, Davies, Globe, and Lario commenced the instant action against Ashland, the two directors of American elected by Ashland, and American. The complaint alleges the facts as above stated; that the purpose of the Agents' Agreement was to prevent control of American from passing to any one stockholder (specifically Phillips, which is a so-called "major" oil company and allegedly controls the votes of Abercrombie and Sunray); that the actions of Ashland and the directors elected by it at and after the December 9 board meeting "are all pursuant to and in furtherance of the plan to transfer control of American Independent to a combination of its stockholders consisting of Phillips, Ashland, Abercrombie and Sunray, all in direct violation of the Agents' Agreement and the purposes pursuant to which American Independent was organized"; and that unless defendants are restrained from holding the proposed December 16 directors' meeting "plaintiffs will suffer great and irreparable injury in that plaintiffs and the other signatories to the Agents' Agreement will lose control of American Independent and American Independent will itself lose its character as an independent oil company, all to the great loss and damage of American Independent and plaintiffs as its stockholders."

The complaint is supported by affidavits of Davies and the presidents of Signal and Hancock, which in substance aver that American was formed with the understanding that it would be free from the control of any one stockholder, that Phillips has been trying to seize control of American, that the Agents' Agreement was executed in order to prevent such seizure, that the actions of Ashland and its representatives referred to in the complaint are in violation of the Agents' Agreement and present the danger that American

---

cess a meeting of the agents under the Agents' Agreement (who were also the respective directors elected by the signatory stockholders) was held. It was at this meeting that the six agent-directors representing plaintiffs stated their opposition to the proposed by-law changes and the December 16 meeting, and the two agent-directors representing Ashland took their contrary position. After the recess the directors' meeting reconvened and the motion to hold the December 16 meeting to adopt the proposed changes was introduced and adopted as above stated.

will fall into the control of Phillips, and that unless Ashland and its representatives are restrained from acting contrary to the Agents' Agreement the respective investments of the stockholders represented by the affiants will be greatly impaired.

Based on the above described complaint and affidavits, the superior court, on December 15, 1954, issued a "temporary restraining order and order to show cause," directing that pending the hearing defendants "and all persons acting for or on behalf of you or any of you . . . and all persons having knowledge of the contents of this order" refrain from conducting or participating in the proposed December 16 directors' meeting or any other directors' meeting called to accomplish the purposes proposed to be undertaken at the December 16 meeting, and from taking any action in violation of the Agents' Agreement. It was further ordered that American refrain from recognizing any action taken contrary to the preceding provisions of the order. The general counsel of American had notice and represented American as attorney of record when the application for the order was heard. Ashland, although not represented at the hearing, appeared in court by counsel later on the same day and moved to vacate the temporary restraining order. The motion was denied.

The restraining order was served in California on December 15, on Ashland's designated statutory agent for service of process in California and on the secretary of American. Copies of the order were sent by telegram to those directors of American who were assembled in Chicago to attend the December 16 meeting, and these directors received their copies prior to holding that meeting. The directors elected by plaintiffs did not attend the December 16 meeting, but the remaining directors, although informed of the terms of the restraining order, proceeded to hold that meeting as planned. It appears that they were advised by counsel that the restraining order did not apply to them because (1) they were not served with process in the pending action and (2) they were not acting as agents of American but were acting "upon" the corporation and were in a position superior to it. At this meeting the proposed by-law changes were adopted by an eight to zero vote.

Plaintiff applied for an order to show cause *re* contempt against Ashland, American, and the directors of American who attended the December 16 meeting, for violating the

terms of the temporary restraining order. This order was issued on February 24, 1955. The terms of the order relative to American stated that it should show cause why it "should not be ordered to purge the contempt aforesaid by expunging from your records all references to the meeting . . . [of December 16] as being null and void and in contempt of this Court." This order to show cause came on for hearing on March 9, 1955, at which time it was dismissed as to all but one of American's directors because they were nonresidents of California and the court had no personal jurisdiction over them, dismissed as to Ashland and the one director of American who was a California resident because of the insufficiency of the affidavits supporting the application for the order, and held in abeyance as to American. It appears that no disposition of the order as to American has yet been made.

On March 10, 1955, plaintiffs filed a supplemental complaint alleging the events which occurred at the December 16 meeting, and asserting that the action taken at that meeting was contrary to the temporary restraining order, the Agents' Agreement, and the underlying agreement on which the corporation was formed. Plaintiffs prayed that the December 16 meeting be declared null and void, that Ashland be restrained from taking any action contrary to the Agents' Agreement, that American be restrained from recognizing or giving effect to any action taken contrary to the provisions of the Agents' Agreement, that all defendants be "enjoined and restrained from conspiring or combining or acting in concert with Phillips . . . for the purpose of transferring control of American . . . to Phillips," and that a preliminary injunction issue embodying the previously mentioned restraints.

On May 3, 1955, a preliminary injunction was issued, enjoining American from giving effect to any action taken at the December 16 meeting (except insofar as the assembled directors authorized retention of new counsel for purposes of defense of the pending action), enjoining American from giving effect to any vote of its directors or stockholders cast contrary to the provisions of the Agents' Agreement, and enjoining Ashland from taking any action contrary to the Agents' Agreement. The injunction specifically provides that American is not restrained "in conducting the ordinary business affairs of the company." Such affairs are defined generally as those not dealing with the corporate structure and organization. The court retained jurisdiction to modify

its order, but apparently such jurisdiction has never been invoked. It is from this order that American and Ashland have appealed.

Following the issuance of the temporary restraining order, Phillips, Abercrombie, and Sunray filed an action in the Delaware Chancery Court against the other seven stockholders of American, American, certain named directors of American, and the bank which held as escrow the shares of American's stock which were subject to the Agents' Agreement. The purpose of this action was to have the Agents' Agreement declared invalid. The chancery court, after rendering several tentative opinions, finally concluded that the Agents' Agreement was valid in part and invalid in part, but its order was reversed by the Delaware Supreme Court on March 19, 1957, the high court holding that the Agents' Agreement was totally "void as an illegal voting trust" contrary to the applicable Delaware statutes. (*Abercrombie* v. *Davies* (1957), —— Del. —— [130 A.2d 338, 347].) The cause was remanded to the chancery court for an appropriate order and on May 3, 1957, that court obediently decreed that the Agents' Agreement "be, and the same hereby is, declared void in its entirety, and is hereby cancelled, vacated and set aside, and the parties thereto, their successors and assigns, are released from all obligations thereunder." The court further enjoined Davies, Signal, Hancock, Globe and Lario (plaintiffs herein) from attempting to induce compliance with the terms of the Agents' Agreement.

The present appeal initially was transferred by this court to the District Court of Appeal. In that court, on April 24, 1957, plaintiffs filed a "notice of motion for leave to produce additional evidence." The "additional evidence" apparently related to the alleged preincorporation understanding of the stockholders on which American was assertedly founded. This motion was denied on May 1, 1957. Subsequently, a hearing of the pending cause was granted by this court. In the meantime, on August 9, 1957, the superior court in which the underlying action is still pending granted defendants' motion to strike the paragraphs of plaintiffs' supplemental complaint which referred to the asserted underlying agreement of the founders of American. The present appeal, which is only from the order granting the preliminary injunction, must be considered in the light of the above summarized proceedings in the courts of both California and Delaware.

All of the parties here agree that because American is a Delaware corporation the validity of the Agents' Agreement is governed by Delaware law. (*Ringling* v. *Ringling Bros.-Barnum & Bailey Comb. Shows* (1946), 29 Del.Ch. 318 [49 A.2d 603, 607 [1]]; *Deibler* v. *Chas. H. Elliott Co.* (1951), 368 Pa. 267 [81 A.2d 557, 561 [4]].) The decision of the Delaware Supreme Court that the Agents' Agreement is totally void is part of the record in this case (see also Corp. Code, § 6602) and that decision, under the above cited authorities and on principles of full faith and credit (U. S. Const., art. IV, § 1), is binding upon us. Since the Agents' Agreement is now to be regarded as wholly void, it necessarily follows that the order granting the preliminary injunction must be reversed insofar as it purports to require defendants to carry out the illegal contract.[4] However, it does not necessarily follow that the temporary restraining order was void or that the preliminary injunction is void to the extent that it enjoins recognition of action taken in disobedience of the restraining order.

Appellants argue that since the Agents' Agreement is wholly void, and since a copy of that agreement is attached to and incorporated in the complaint in this action, the invalidity of the agreement is apparent from the face of the complaint, and therefore the temporary restraining order based on that agreement and the preliminary injunction which replaced it are also totally void and without effect. This contention is not tenable.

---

[4]Plaintiffs suggest that the preliminary injunction should be modified rather than dissolved as to its provisions restraining action or recognition of action taken contrary to the Agents' Agreement, so as to restrain action taken contrary to the "underlying" agreement of American's stockholders that Phillips not be allowed to seize control of American. However, the complaint in this action seeks to enforce the Agents' Agreement rather than any underlying understanding. By their supplemental complaint plaintiffs sought to inject the issue of the alleged preincorporation understanding but, as noted previously, the superior court, by its order dated August 9, 1957, apparently struck out the paragraphs referring to such "understanding." Thus what plaintiffs actually seek is not a modification of the preliminary injunction as it now stands but a grant of injunctive relief based on a different set of circumstances not presently embraced by the pleadings in this action. In other words, plaintiffs seek what would be in effect an entirely new injunction and if this court responded to such a request it would be tantamount to the assumption of original jurisdiction in an injunction matter. We do not exercise such power. (*McCann* v. *Union Bank & Trust Co.* (1935), 4 Cal.2d 24, 27 [2] [47 P.2d 283]; *Hicks* v. *Michael* (1860), 15 Cal. 107, 114-115.) If plaintiffs have any grounds for the issuance of an injunction based on some underlying agreement of American's stockholders, they should present such grounds to the trial court in an appropriate proceeding.

If the Agents' Agreement was void under Delaware law in 1957, presumably it was equally void in 1954 when the present action was filed, or in 1950 when the agreement was made. However, even if the agreement was void *ab initio*, it does not follow that such voidness was apparent on the face of the complaint herein, or that the superior court lacked the power to make its temporary orders.

The validity of the agreement here depended upon the interpretation and application of Delaware law. The effect of such law was not so clear at the time the complaint herein was filed that the superior court could make its ruling on the validity of the Agents' Agreement prior to a full adversary hearing on the merits. By issuing the temporary restraining order the court was attempting to maintain the status quo pending its determination of the applicable law and it cannot be said, as a matter of law, that the trial court, based on the showing made before it, should have then declared the agreement void.

The cases cited by appellants in support of their position, that the temporary orders are void as in excess of the jurisdiction of the court, are not in point. This is not a case where the court which issued the injunction did not have jurisdiction to do so because of noncompliance with the notice requirements of the injunction statute (Code Civ. Proc., § 527; cf. *Green* v. *Superior Court* (1924), 65 Cal.App. 237 [223 P. 582]; *Kelsey* v. *Superior Court* (1919), 40 Cal.App. 229 [180 P. 662]), or where the issuing court lacked the power to grant injunctive relief because exclusive jurisdiction rested in another body (cf. *In re DeSilva* (1948), 33 Cal.2d 76 [199 P.2d 9]). Nor is this case similar to *Harlan* v. *Superior Court* (1949), 94 Cal.App.2d 902, 905 [211 P.2d 942], where the injunction statute was not complied with because there was "a complete absence of *any* factual showing by pleading or affidavit upon which the court could have based a finding of the existence or nonexistence of grounds for granting the temporary [restraining order or] injunction."[5] Here

---

[5]Because there was no factual showing whatsoever in the Harlan case the court there stated that the situation was "not one where a question of law exists as to the sufficiency of the facts averred by the appellant to justify an order made in the exercise of the court's jurisdiction." (P. 905 [3] of 94 Cal.App.2d.) But the question of the sufficiency of the showing to justify temporary injunctive relief is necessarily a question of law. What the court in Harlan apparently meant was that the showing was insufficient as a matter of law to meet the requirements of section 527 of the Code of Civil Procedure and therefore could not

a factual showing was made and the sufficiency of the facts, i.e., the validity of the Agents' Agreement, was a question of law which the trial court had the power to determine in the first instance, and its determination, even though erroneous, had to be respected until reversed.[6]

At the time the orders in this case were issued, the court had jurisdiction over the parties[7] and the subject matter, there was no claim that the procedural requirements of the injunction statute had not been met, and there was at least a prima facie showing of facts which would sustain the court's orders. Under the circumstances, these orders, although subsequently determined to be erroneous, were not void. As stated in *In re Valterza* (1940), 37 Cal.App.2d 682, 683-684 [100 P.2d 337] (quoting from *Smith* v. *Schlink* (1908), 44 Colo. 200 [99 P. 566, 570]), "That the court had jurisdiction of the parties and the subject-matter cannot be questioned. This being true, and it not appearing that the judgment was not within the issues presented by the pleadings, however erroneous it may be, the judgment cannot be held to be void, so as to bring this case within the rule that disobedience of a void decree does not constitute contempt of court."

Had there been no proceedings in Delaware, and had the case gone to trial in California on its merits and the California courts ultimately determined that plaintiffs had no right to an injunction because the agreement was invalid,

---

justify the order made; however, such a determination itself is a resolution of a question of law. The holding in the Harlan case is sustainable on the stated ground that failure to show any factual basis for injunctive relief is a failure to comply with the requirements of the injunction statute. However, insofar as that case implies that no question of law is involved in such a situation, it is contrary to law and should be disapproved.

[6] "An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within its jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." (*Howat* v. *Kansas* (1922), 258 U.S. 181, 189-190 [42 S.Ct. 277, 66 L.Ed. 550].)

[7] Whether the court had personal jurisdiction over defendants Blazer and Burnam need not be here decided since its jurisdiction over Ashland and American is undisputed and such jurisdiction is clearly sufficient to support its orders.

it cannot seriously be contended that such determination would have affected the interim validity of the temporary orders. (See *In re Fortenbury* (1940), 38 Cal.App.2d 284, 290 [3] [101 P.2d 105]; see also *United States* v. *Mine Workers* (1947), 330 U.S. 258, 294 [67 S.Ct. 677, 91 L.Ed. 884] ["Violations of an order are punishable as criminal contempt even though the order is set aside on appeal"].) The ruling of the Delaware court could have no greater effect on the validity of the temporary orders.

■ The power of a court of equity to issue an order maintaining the status quo pending its determination of the applicable law cannot be seriously disputed. (See *United States* v. *Mine Workers* (1947), *supra*, 330 U.S. 258, 293 ["the District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief"]; *Borg* v. *International Silver Co.* (1925, 2d Cir.), 11 F.2d 147, 152 ["If it appeared here that the directors were using their powers to get control, or in any way other than the honest exercise of their discretion, we ought to maintain the status quo till hearing, even though the plaintiffs' case were doubtful"].) And, whether the court misapplies the law and holds valid an illegal contract, or subsequently determines that the contract was void *ab initio* under the controlling law, its interim orders do not thereby become a nullity.

■ As this court stated in *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955), 44 Cal.2d 715, 725 [10] [285 P.2d 636]: "It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties." This means that such an order is not void, since a void order is never res judicata. ■ It follows that an interlocutory order issued contrary to law is not void either, where the court has "fundamental" jurisdiction. ■ "[I]f the court finds contrary to the evidence or misapplies the law . . . the judgment, until corrected or vacated in some appropriate manner, is as conclusive upon the parties as though it had settled the controversy in accordance with the principles of abstract justice." (*Estate of Harrington* (1905), 147 Cal. 124, 129 [81 P. 546, 109 Am.St.Rep. 118].) The court in this case had "fundamental" jurisdiction over American and Ashland and its temporary orders were not void as to them.

But, it is argued, "lack of jurisdiction . . .may be applied

to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira* v. *District Court of Appeal* (1941), 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) And, appellants contend, this latter rule is applicable here. In support of this contention appellants rely on *Hunter* v. *Superior Court* (1939), 36 Cal.App.2d 100 [97 P.2d 492]. In *Vasquez* v. *Vasquez* (1952), 109 Cal.App.2d 280, 283-284 [240 P.2d 319], the court reviewed the cases in which the above quoted rule has been applied. The court there (p. 284 [13]) cited the Hunter case for the proposition that "A judgment based on an illegal contract because it was in restraint of trade is void where the illegality appeared on the face of the judgment roll," adding, however, "If a court grants relief, which under no circumstances it has any authority to grant, its judgment is *to that extent* void." As noted hereinabove, the invalidity of the Agents' Agreement in this case does not appear as a matter of law on the face of the complaint or the restraining order, and the relief granted was not of a character which "under no circumstances" it had "any authority to grant." The Hunter case is thus clearly distinguishable. It is nevertheless argued that the principle for which the Hunter case actually stands is that "a judgment based on a void contract is itself void." (See *Estate of Crane* (1946), 73 Cal.App.2d 93, 100 [165 P.2d 940].) But the Hunter case does not reasonably admit of such construction. ■ As aptly pointed out in the Crane case, "to apply the quoted statement . . . generally . . . would be demonstrably unsound. 'Jurisdiction, being the power to hear and determine, implies power to decide a question wrong as well as right' [citation]." ■ The legality of a contract presents a question of law, and a temporary restraining order enforcing (prohibiting breach of) such contract is not invalid merely because the court decided that question erroneously in the first instance and it was subsequently determined that the contract was illegal and void.

Appellants next contend that, even if the temporary restraining order was not void, there was no violation of this order since the December 16, 1954, meeting was held by the directors as directors and not for the corporation, and the court had no jurisdiction over the directors as such. Thus it is urged that "Only two directors were named as parties

and not one was served with process. They were all outside the state. Orders to show cause why they should not be adjudged guilty of contempt of court were quashed.[8] . . . In holding the directors' meeting, they were not performing any corporate act so that service upon the corporation would bind them as servants or agents of the corporation. They were acting *upon,* not for, the corporation. The corporation was the *actee,* the directors the actors." Defendants' argument, simply stated, is that an injunction against a corporation does not bind the directors of the corporation, because the directors do not act *for* the corporation, but *upon* it. This contention is without merit.

It has long been settled that "The Directors are the chosen representatives of the corporation, and constitute, . . . to all purposes of dealing with others, *the corporation.* What they do within the scope of the objects and purposes of the corporation, the corporation does." (*Maynard* v. *Fireman's Fund Ins. Co.* (1867), 34 Cal. 48, 57 [91 Am. Dec. 672]

An injunction against the corporation, therefore, is clearly an injunction against the directors, acting in their capacity as directors. "A corporation, as an artificial entity, cannot of itself perform or refrain from performing an act; only its officers and agents can. An injunction against a corporation binds not only the so-called 'corporate entity' but also all persons who act for the corporation in the transaction of its business and have knowledge of the decree." (*Katenkamp* v. *Superior Court* (1940), 16 Cal.2d 696, 700 [5] [108 P.2d 1].) The temporary restraining order in this case enjoined the corporation and anyone acting on its behalf with knowledge of the order from conducting the December 16 meeting. A copy of this order was served on the secretary of the corporation in California, and he in turn transmitted copies of the order to Chicago, where the directors' meeting was to be held. That those directors present had knowledge of the existence of the order prior to holding that meeting is shown by the minutes of the meeting, which they held despite the injunction. The action which they thereafter purported to take was corporate action. In taking such action they acted *as* the corporation, but also, since the cor-

---

[8]However, the order to show cause *re* contempt against American is apparently still pending in the superior court, and the order against Ashland was dismissed solely because of the failure of the supporting affidavits to properly show that Ashland had knowledge of the restraining order.

poration is technically unable to act for itself, they acted *for* the corporation. The action so taken was in violation of the restraining order and rendered the corporation and those acting in its behalf liable to punitive measures. Whether or not the directors, who with one exception were nonresidents of California and who were not served with process and have not appeared in this action, are individually liable for contempt in California, the corporation which was served with process and is a party, and which acted, through its directors, with knowledge of the restraining order in violation of it, is subject to remedial measures.

As stated in *Morton* v. *Superior Court* (1884), 65 Cal. 496, 497 [4 P. 489], " 'the effect of an injunction restraining any acts of a corporate body, and addressed to it and its agents, etc., is to bind not only the *intangible artificial being*, but also all the individuals who act for the corporation in the transaction of its business to whose knowledge the decree comes. Unless this be so, it would be necessary in order effectually to bind a corporation by an injunction, to make every person a party to a suit who could by any possibility be its agent in doing the prohibited act.' (High, Injunctions, § 850.) " The only persons who could act for the corporation in doing the prohibited act in this case, i.e., carry on a directors' meeting, were the directors. Enjoining a corporation from holding a directors' meeting necessarily enjoins those directors with knowledge of the decree from participating in holding such meeting.

In its preliminary injunction herein, the court enjoined American from recognizing or giving effect to the actions taken at the December 16 meeting in disobedience to the earlier court decree. Such a remedial measure, under the circumstances, is appropriate. As noted hereinabove, the proposed remedy in the contempt proceeding brought against American is that the corporation be ordered to expunge from its records all references to the December 16 meeting. The preliminary injunction, by restraining the recognition of actions taken at that meeting (other than the authorization to retain new counsel to defend in these proceedings), preserves the potentiality of such remedy being imposed, and in the meantime prevents the corporation from giving effect to actions taken contrary to the court's order. However, appellants contend that even if the corporation may be held in criminal contempt it may not be subjected to punishment which has a remedial effect since, it is urged, it is improper

to declare actions taken contrary to an injunction invalid where it is later determined that the injunction should never have issued, and that the effect of the preliminary injunction is to declare invalid the actions taken at the December 16 meeting.

Appellants, in reliance upon *Hanley* v. *Most* (1941) 9 Wn. 2d 474 [115 P.2d 951], and *Deeds* v. *Gilmer* (1934), 162 Va. 157 [174 S.E. 37, 79], urge that the actions taken at the December 16 directors' meeting were not invalid, even if such actions were contrary to the terms of the temporary restraining order, and that therefore the preliminary injunction should not be allowed to stand insofar as it restrains recognition of such actions. However, those cases are not persuasive or controlling to the end for which they are cited here. To the contrary, they recognize that the condition on which action in violation of an erroneous injunctive order is allowed to stand is that "the violation of the injunction has not damaged any property or rights" of the complainant so that "he has not been damaged by its violation." (See *Deeds* v. *Gilmer* (1934), *supra,* 162 Va. 157 [174 S.E. 37, 79].) In such a situation the court may properly conclude that it is inequitable to compel an invalidation of the proceedings taken contrary to the order, and leave the violator liable only for criminal contempt. But where the disobedient action directly harms the complainant, or deprives him of some substantial right which he failed to protect in reliance on the injunctive order, it is within the power of the court to declare the action invalid and to prevent its effectuation. Such is the case here.

As we have already shown, the temporary restraining order enjoined American, and *a fortiori* its directors through whom alone American could act, from conducting or participating in the December 16 directors' meeting. Relying on and obedient to the order, the six directors elected by plaintiffs did not attend or take part in that meeting; to do so would have rendered them subject to possible contempt proceedings. But the remaining nine directors nonetheless proceeded to act as and for the corporation and as such to hold the meeting as planned, and therein purported as corporate action to adopt the resolutions to which plaintiffs and the directors elected by them were opposed. To allow those actions to stand would mean that plaintiffs, by relying on an order of a court which was valid on its face, would be foreclosed from being

heard on measures which affected major changes in the organization of the corporation of which they were stockholders, merely because it was later determined that the injunction should not have been issued. "Each member of a corporate body has the right of consultation with the others, and has the right to be heard upon all questions considered, and it is presumed that, if the absent members had been present, they might have dissented, and their arguments might have convinced the majority of the unwisdom of their proposed action, and thus have produced a different result." (*Holcombe* v. *Trenton White City Co.* (1912), 82 N.J. Eq. 122 [82 A. 618, 624].) "Every director is entitled to an opportunity to be present and participate in the deliberations of the board and to express his opinion with respect to any proposed action." (*Hill Dredging Corp.* v. *Risley* (1955), 18 N.J. 501 [114 A.2d 697, 714].) American, acting through the directors who conducted the December 16 meeting, violated the restraining order and should not be allowed, through thus proceeding, to in effect deprive the directors who in obedience to the restraining order did not attend the meeting, of their right to participate in all corporate meetings, and to be heard and vote on basic issues.

Thus the preliminary injunction, insofar as it restrains American from recognizing or giving effect to the actions purportedly taken at the December 16 meeting (other than the action in retaining new counsel to defend in the present proceedings), is valid and should be continued in effect. This conclusion is not inconsistent with the order of the Delaware court enjoining plaintiffs from attempting to induce compliance with the terms of the Agents' Agreement. By preventing recognition of the actions taken at the December 16 meeting we do not breathe new life into or purport to enforce the Agents' Agreement; we merely compel respect for an order of a California court which was valid on its face, and we refuse to allow a party who acted in reliance on such order to be deprived of substantial rights by action taken in disobedience to it.

For the above stated reasons the order granting the preliminary injunction is reversed insofar as it purports to compel compliance with the void Agents' Agreement, but is affirmed insofar as it forbids recognition by American of the actions purportedly taken as corporate action at the Decem-

ber 16, 1954, directors' meeting in disobedience to the previously issued temporary restraining order.

Shenk, Acting C. J., Traynor, J., Spence, J., McComb, J., and Draper, J. pro tem.,* concurred.

Gibson, C. J., did not participate herein.

CARTER, J.—I concur in the result reached by the majority but only with the understanding that the temporary restraining order and preliminary injunction are declared valid for the sole purpose of protecting the plaintiffs who relied upon the erroneous temporary restraining order and were absent from the directors' meeting held on December 16, 1954, as the result of complying with said order. This will now afford plaintiffs the opportunity of participating in a meeting of the board and expressing their views relevant to the business conducted at said meeting. For all other purposes I regard both the temporary restraining order and preliminary injunction as void.

Furthermore, inasmuch as the only reason for considering the temporary restraining order as valid, was to show that plaintiffs' reliance thereon was justified, and therefore, entitled to protection, I refrain at this time from expressing any opinion concerning its operative effect since it was not before the court in any other context but the one heretofore mentioned.

The petition of appellant American Independent Oil Company for a rehearing was denied March 26, 1958. Draper, J. pro tem.,* participated therein in place of Gibson, C. J.

---

*Assigned by Chairman of Judicial Council.